# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: SENSIPAR (CINACALCET HYDROCHLORIDE TABLETS) ANTITRUST LITIGATION | C.A. No. 19-md-02895-LPS |
| THIS DOCUMENT RELATES TO:<br><br>ALL DIRECT PURCHASER ACTIONS | C.A. No. 19-396-LPS<br><br>C.A. No. 19-1460-LPS |

## NOTICE OF SERVICE OF SUBPOENA
## DIRECTED TO AJANTA PHARMA USA INC.

PLEASE TAKE NOTICE that the subpoena directed to Ajanta Pharma USA Inc., attached as Exhibit A was served in the manner indicated in the accompanying affidavit of service.

Dated: October 22, 2019

CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP

*/s/ Tiffany J. Cramer*
Robert J. Kriner, Jr. (Del. Bar No. 2546)
Scott M. Tucker (Del. Bar No. 4925)
Tiffany J. Cramer (Del. Bar No. 4998)
Vera G. Belger (Del. Bar No. 5676)
CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP
2711 Centerville Road, Suite 201
Wilmington, DE 19808
(302) 656-2500
rjk@chimicles.com
smt@chimicles.com
tjc@chimicles.com
vgb@chimicles.com

*Liaison Counsel for Plaintiffs César Castillo, Inc., KPH Healthcare Services, Inc., a/k/a*

*Kinney Drugs, Inc. and the Proposed Direct Purchaser Class*

# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
_____ District of _____

| | )  |
|---|---|
| *Plaintiff* | ) |
| v. | )  Civil Action No. |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
_____
*(Name of person to whom this subpoena is directed)*

❒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*
OR

_____          _____
*Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____, who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:19-md-02895-LPS

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Ajanta Pharma USA Inc.
on *(date)* 10/22/2019 .

☐ I served the subpoena by delivering a copy to the named person as follows:
Sailesh K. Patel, Schiff Hardin, 233 South Wacker Drive, Suite 7100, Chicago, IL 60606
on *(date)* 10/22/2019 ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 10/22/2019

*Server's signature*

Peter Moran, Associate Attorney
*Printed name and title*
Nussbaum Law Group, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036

*Server's address*

Additional information regarding attempted service, etc.:

The above-referenced counsel, who represented the subpoenaed party in related litigation, agreed to accept service on their behalf.

Case 1:19-md-02895-LPS   Document 57   Filed 10/22/19   Page 6 of 20 PageID #: 1033

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## REQUESTS FOR PRODUCTION

1. Documents, irrespective of date, sufficient to show the first and last dates on which You sold any Generic Sensipar.

2. The complete regulatory file(s) for any Generic Sensipar, including the ANDA(s), all supplements and amendments to the ANDA(s), any ANDA-related submissions and correspondence, any Authorized Generic-related submissions and correspondence, all communications to/from the FDA (including any and all memorializations of oral communications such as telephone contact reports), and all internal communications related to any of the foregoing.

3. All documents and communications concerning the discontinuation of any ANDA by You for Generic Sensipar.

4. All documents relating to any FDA inquiry or proceeding relating to Sensipar or Generic Sensipar.

5. All documents relating to and/or showing bioequivalence of Generic Sensipar to Sensipar.

6. All documents relating to draft and final forecasts or projections (whether sales forecasts, manufacturing forecasts, or otherwise) for any Generic Sensipar, including all assumptions used.

7. All documents relating to the strength(s) or weakness(es) of any NPS Patent.  By way of example only, such documents might include emails, memoranda, strategic planning documents, or meeting minutes that discuss the merits or expected outcome of any Sensipar Patent Litigation, as well as all relevant non-public documents served on adverse parties in any Sensipar Patent Litigation.

8. All documents relating to the progress of Your Generic Sensipar, from formulation to ANDA submission, efforts made to obtain FDA ANDA approval, scale up, validation, manufacturing, marketing, communications with potential customers, launch readiness, and launch. Such documents might include emails, memos, and other documents relating to the aforementioned, and agendas and minutes of meetings of any product identification teams/committees, product development teams/committees, or any other teams, committees, or departments involved in any of the aforementioned activities.

9. All documents relating to actual, potential, or suspected competition to Sensipar from any other Generic Sensipar or Authorized Generic Sensipar.

10. All documents relating to any of the following of Defendants' actions:

   a. obtaining of any NPS Patents and related conduct in the prosecution of the underlying patent applications;

   b. listing of any NPS Patents in the FDA's Orange Book;

   c. institution of any patent infringement litigation based on alleged infringement of any NPS Patent;

   d. submission of any citizen petition(s) and/or other petition(s) or correspondence to the FDA concerning the therapeutic substitution of Generic Sensipar for Sensipar;

   e. any other action that may have affected the market entry timing of any Generic Sensipar.

11. Document(s) and/or communication(s) to/from any governmental entity, including but not limited to the U.S. Senate, the Federal Trade Commission, the Department of Justice, the Patent and Trademark Office, or the Food and Drug Administration, concerning Sensipar or Generic Sensipar.

12. Documents sufficient to show your organizational structure as it pertains to, and the personnel responsible for, the research, development, regulatory approval, manufacture, market analysis, timeframe for generic launch (whether for Generic Sensipar or any other generic

drug) by You or any other company, forecasts or analyses of revenues, profits, prices, discounts, Best Price or Medicaid rebate calculations, commercial launch readiness, sale, and/or marketing of any Generic Sensipar.

13. Documents discussing any litigation pertaining to Sensipar or Generic Sensipar. By way of example only, such documents might include emails, memos, strategic planning documents, forecasts, timelines, meeting agendas/minutes discussing the merits or expected outcome of any patent litigation pertaining to Sensipar or Generic Sensipar.

14. Except to the extent in the possession of a Defendant, and provided You consent in writing to allow such Defendant(s) to produce them to the plaintiffs in this litigation, all documents You produced, served, filed with the court, or received in any litigation filed against You by any Defendant, or filed by You against any Defendant, involving claims or defenses based in whole or in part on any patent allegedly covering Sensipar.  For avoidance of doubt, this request includes all litigation record documents that were either filed in court under seal or served on (or otherwise made available to) an adverse party, including, but not limited to, pleadings, discovery requests and responses, motions and responses, privilege and other logs of withheld documents, production logs, memoranda, briefs, deposition transcripts and exhibits thereto, affidavits and declarations and exhibits thereto, expert reports and exhibits thereto, transcripts of proceedings, trial transcripts and exhibits, appeal briefs and exhibits thereto, and all other documents generated or used by any party or nonparty in any such action. This request does not include underlying documents productions to the extent not either attached to and/or explicitly referenced by any of the aforementioned litigation record documents.

15. Documents concerning other companies' actual, potential, or suspected generic Sensipar or related ANDA(s) or any authorized Generic Sensipar.

16. All communications between You and any of the Defendants in this litigation, or any actual or suspected generic Sensipar ANDA filer, regarding Sensipar, Generic Sensipar, or any litigation or settlement related thereto.

17. Documents sufficient to show Your estimates, expectations, or actual costs of manufacturing Generic Sensipar, including, but not limited to, documents discussing the cost of equipment, personnel, capital, training, raw materials, and packaging.

18. All of Your contracts and/or agreements related to rebates, chargebacks, discounts, or any other adjustment to price concerning Generic Sensipar.

19. Electronic data in a tab-, comma-, or semicolon-delimited ASCII flat text file or similar electronic format sufficient to identify sales of Generic Sensipar by You during the Relevant Time Period in transaction-by-transaction format, as follows:

   a. All direct sales/invoice transactions (as well as any discounts or any other price adjustments or offsets contained in the transaction data) including the following fields: (i) price or dollar amount, (ii) source of the transaction price, (iii) number of units sold, (iv) returned or otherwise affected by the transaction, (v) unit of measure, (vi) date of transaction, (vii) information sufficient to identify the type of transaction (e.g., a sale, a return, a discount, etc.), (viii) NDC, (ix) UPC, (x) SKU, (xi) pharmaceutical description, (xii) pharmaceutical form, (xiii) pharmaceutical strength, (xiv) package size in extended units per package, (xv) customer name, (xvi) customer number, (xvii) customer address, (xviii) customer class of trade code and the description of that code (all such customer information being provided for both the bill-to customer and the ship-to customer), and (xix)

the customer's parent company (if the data identify a subsidiary, corporate affiliate, division, satellite office, distribution center, warehouse, or the like).

b. All data relating to chargebacks, rebates, discounts, and other consideration given or accrued, including the following fields: (i) each transaction, including the date thereof; (ii) the name and address of, and all unique codes or identifiers for, the person, firm, corporation, or other business entity whom You paid, or on whose behalf You accrued, the chargeback, rebate, discount, and/or other consideration; (iii) the name and address of, and all unique codes or identifiers for, the persons, firms, corporations, or other business entities that made the purchases in respect of which You paid or accrued the chargeback, rebate, discount, or other consideration; (iv) the sales, or group of sales, upon which the rebate, discount, or other consideration is based, including: (aa) the number of units of the particular pharmaceutical sold, by package size, SKU, UPC, NDC, and any and all other unique codes or other identifiers for each sale or other transaction; (bb) the bill-to customer; (cc) the ship-to customer; (dd) the dates of the sales, or group of sales; (ee) the invoice amount in dollars for the sales or group of sales; (ff) the amount of the chargeback, rebate, discount, or other consideration paid or accrued; and (gg) the contract, agreement, or other basis upon which the chargeback, rebate, discount, or other consideration is calculated.

c. All administrative fee transactions including: (i) fee amount paid, (ii) date of payment, (iii) date or date range of sales relating to the fee that was paid, (iv) information sufficient to identify the type of administrative fee (if applicable), (v)

      customer name, (vi) customer number, (vii) customer address, and (viii) customer class of trade code and the description of that code;

d. Any other paid or accrued discounts, rebates, chargebacks, billbacks, unit adjustments, price adjustments, shelf-stock price adjustments, returns, third-party returns, error corrections, free goods, nominally-priced goods, and all other transaction types not reflected in the above (a through c), whether created or maintained daily, monthly, quarterly, or at some other periodicity.

e. The complete documentation for all items above (a through d) including (i) lookup tables, (ii) data dictionaries, (iii) lists of fields, (iv) descriptions of information contained in those fields (e.g., field lengths, formats, etc.), and (v) descriptions of any codes used in any fields (such as class of trade designations, etc.), including but not limited to (aa) a separate pharmaceutical list, including NDC, SKU, UPC, pharmaceutical description, and package size; (bb) a separate table that lists, for each "bill-to customer" and "ship-to customer," the customer number, parent customer number, customer group number, customer identity, contact information, address, and class of trade (e.g., SIC code); (cc) a separate table listing and defining each transaction code, abbreviation, or other field or entry code, and indicating (i) whether quantity values for each transaction type should be included in calculating net quantity sold, or should be ignored because they do not affect net quantity sold, and (ii) how negative unit and dollar values should be treated in calculating net quantities and dollar amounts; (dd) all datasets and calculations used (i) to determine accrued rebates and/or chargebacks and/or (ii) to periodically reconcile accrued rebates and/or chargebacks with actual

        rebates and/or chargebacks; (vi) return and/or exchange policies; and (vii) payment terms.

    f.  With respect to the data produced in response to paragraphs a. through e., above, documents, such as a data dictionary or legend, sufficient to (i) define any codes or fields contained in the data whose meaning is not obvious; (ii) explain whether quantity values for each transaction type should be included in calculating net quantity sold, or should be ignored because they do not affect net quantity sold; (iii) explain how You determine accrued rebates and/or chargebacks, and how You reconciled accrued rebates and/or chargebacks with actual rebates and/or chargebacks; and (iv) if necessary, explain how to apportion or allocate rebates attributable to purchases of generic Celebrex relative to purchases of other drugs.

20. All Documents concerning patients' ability or willingness to switch from (i) Sensipar to Generic Sensipar, and (ii) one manufacturer's Generic Sensipar to another manufacturer's Generic Sensipar, including any assessments or analyses of any potential or actual effect of these switches on Your sales of Generic Sensipar.

21. All Documents concerning Your readiness or unreadiness, or ability or inability, to launch Generic Sensipar "at risk," including but not limited to the factors considered in deciding whether to launch "at risk."

22. All Documents concerning the readiness or unreadiness, willingness or unwillingness, or ability or inability of any pharmaceutical company to develop, formulate, scale up, process, validate, manufacture, market, and sell Generic Sensipar.

23. Documents sufficient to show Your understanding of any other company's actual or expected/suspected Generic Sensipar products (including ANDA(s) thereof) or any authorized generic of Sensipar, including information concerning any potential entry dates.

24. All Documents concerning the sale of Sensipar or any generic version thereof in the United States, including but not limited to information, analyses, studies, projections, forecasts, investigations, or reports concerning the actual, potential, expected, or projected sales of such products or revenues, profits, prices, discounts, Best Price or Medicaid rebate calculations, concerning such products.

25. All documents You produce or have produced to any other party in this litigation.

26. All contracts, draft contracts, notes, memoranda, analysis thereof, with Amgen in settlement of the Sensipar litigation, whether or not executed by the parties.

27. All analyses, including projections of revenue or lost revenue, from the "acceleration" clause in Your Settlement Agreement with Amgen.

## SCHEDULE B

## DEFINITIONS AND INSTRUCTIONS

A. "Document" means, and is equal in scope to, the usage of this term in Fed. R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

B. "Sensipar" means all pharmaceutical products that were or are labeled, marketed, or sold under the trademark or brand name "Sensipar" (or any variant thereof), regardless of the dosage form, dosage strength, or package size, including, but not limited to, the pharmaceutical products approved by the Food and Drug Administration ("FDA") under NDA New Drug Application ("NDA") No. N021688 (the "Sensipar NDA").

C. "Generic Sensipar" means any product that is (or is sought to be) AB-rated by the FDA to brand Sensipar, including, but not limited to, the product(s) covered by the following Abbreviated New Drug Applications ("ANDA"):

| ANDA No. | Applicant |
|---|---|
| A203422 | Mylan Pharmaceuticals Inc. |
| A204377 | Watson Laboratories Inc., an Indirect Wholly-Owned Subsidiary of Teva Pharmaceuticals USA, Inc. |
| A206125 | Aurobindo Pharma Ltd. |
| A207008 | Sun Pharmaceutical Industries Ltd. |
| A208915 | Cipla Ltd. |
| A209226 | Strides Pharma Global PTE Ltd. |
| A210207 | Piramal Healthcare UK Ltd. |
| A210548 | Lupin Ltd. |
| A210570 | Alkem Laboratories Ltd. |

For purposes of the above Requests for Production, the term "Generic Sensipar" also includes any Authorized Generic Sensipar.

   D.  "Authorized Generic Sensipar" means any cinacalcet hydrochloride tablets product other than brand Sensipar marketed (or to be marketed) under the Sensipar NDA.

   E.  "Defendant" or "Defendants" means any one or all of the following companies:

     a. "Amgen" means Amgen Inc. and includes parents, subsidiaries, affiliates, predecessors, and successors and any employee, officer, or other agent thereof.

     b. "Watson" means Watson Laboratories Inc., an indirect wholly-owned Subsidiary of Teva Pharmaceuticals USA, Inc., all parents, subsidiaries, affiliates, predecessors, and successors thereof, and any employee, officer, or other agent of any of the foregoing, and includes Actavis Pharma, Inc.

     c. "Teva" means Teva Pharmaceuticals USA, Inc., all parents, subsidiaries, affiliates, predecessors, and successors thereof, and any employee, officer, or other agent of any of the foregoing.

   F.  "The NPS Patents" means collectively U.S. Patent Nos. 6,211,244 (the '244 Patent); 6,001,884 (the '884 Patent); 6,031,003 (the '003 Patent); 6,313,146 (the '146 Patent); 6,011,068 (the '068 Patent); 7,829,595 (the '595 Patent); and 9,375,405 (the '405 Patent).

   G.  "Sensipar Patent Litigation" means any patent infringement litigation and/or *inter partes review* proceeding that concerns any one, some, or all of the NPS Patents, including but not limited to *Amgen Inc. v. Apotex,* 1:16-cv-00926 (D. Del.); *Amgen Inc. v. Micro Labs*, 1:16-cv-00854; *Amgen Inc. v. Amneal Pharms. LLC*, 16-cv-853 (D. Del. 2016); *Amgen Inc. v. Cipla*, 16-cv-880 (D. Del.);or. 19-cv-00044 (D. Del.); *Amgen Inc. v. Ajanta,* 16-cv-899 (D.

Del.); *Amgen Inc. v. Amneal Pharm. LLC*, 16-cv-853 (D. Del.); *Amgen Inc. v Dr. Reddy's*, 16-cv-900 (D. Del.); *Amgen Inc. v. Torrent,* 17-cv-1844 (D. Del.); *Amgen Inc. v. Watson*, 16-cv-855 (D. Del.); *Amgen Inc. v. Watson*, 17-cv-1807 (D. Del.); *Amgen Inc. v. Barr*, 17-cv-1808 (D. Del.); *Amgen Inc. v. Teva*, 17-cv-1809 (D. Del.); *Amgen Inc. v. Breckenridge*, 16-cv-927 (D. Del.); *Amgen Inc. v. Hetero*, 16-cv-928 (D. Del.); *Amgen Inc. v. Sun Pharmaceuticals*, 16-cv-882 (D. Del.); *Amgen Inc. v. Strides*, 16-cv-881 (D. Del.); *Amgen, Inc. v. Aurobindo Pharma Ltd. et al.*, 16-cv-853 (D. Del.); *Amgen, Inc. v. Macleods*, 17-cv-817 (D. Del.); *Amgen, Inc. v. Lupin* , 17-cv-816 (D. Del.); *Amgen, Inc. v. Alkem,* 17-cv-815 (D. Del.)*; Amgen, Inc. v. Emcure,* 18-cv-1393 (D. Del.).

      H.     "And/or" shall be construed inclusively so as to bring within the scope of the subjects of examination the broadest range of information sought.

      I.     "Related" or "relating" to should be read as if followed by the phrase "in whole or part.

      J.     Unless responsive information exists which pre-dates the relevant time period, the relevant time period applicable to the above Requests for Production is January 1, 2015 to the present.

      K.     "Settlement Agreement" means the agreements between a generic manufacturer to settle the NPS litigation; collectively "Settlement Agreements" means one or more the following:

          a.  "Amgen-Cipla Agreement" means the agreement between Amgen and Cipla to settle the *Amgen v. Cipla* (16-cv-880 (D. Del.) or 19-cv-00044 (D. Del.)) litigation.

11

b. "Amgen-Ajanta Agreement" means the agreement between Amgen and Ajanta to settle the *Amgen Inc. v. Ajanta* (16-cv-899 (D. Del.)) litigation.

c. "Amgen-Mylan Agreement" means the agreement between Amgen and Mylan to settle the *Amgen Inc. v. Mylan* (17-cv-113 (D. Del.)) litigation.

d. "Amgen-Amneal Agreement" means the agreement between Amgen and Amneal to settle the *Amgen Inc. v. Amneal Pharm. LLC* (16-cv-853 (D. Del. 2016)) litigation.

e. "Amgen-Dr. Reddy's Agreement" means the agreement between Amgen and Dr. Reddy's to settle the *Amgen Inc. v. Dr. Reddy's* (16-cv-900 (D. Del.)) litigation.

f. "Amgen-Torrent Agreement" means the agreement between Amgen and Torrent settle the *Amgen Inc. v. Torrent* (17-cv-1844 (D. Del.)) litigation.

g. "Amgen-Watson/Actavis/Barr/Teva Agreement" means the agreement between Amgen and Watson/Actavis/Barr/Teva to settle the litigation between Amgen and those companies, including but not limited to Case Nos. 16-cv-855 (D. Del.), 17-cv-1807 (D. Del.), 17-cv-1808 (D. Del.), and 17-cv-1809 (D. Del.).

h. "Amgen-Breckenridge Agreement" the agreement between Amgen and Breckenridge to settle the *Amgen Inc. v. Breckenridge* (16-cv-927 (D. Del.)) litigation.

i. "Amgen-Hetero Agreement" means the agreement between Amgen and Dr. Hetero to settle the *Amgen Inc. v. Hetero* (16-cv-928 (D. Del.)) litigation.

j. "Amgen-Sun Agreement" agreement means the agreement between Amgen and Sun Pharmaceuticals to settle the *Amgen Inc. v. Sun Pharmaceuticals* (16-cv-882 (D. Del.)) litigation.

k. "Amgen-Strides Agreement" means the agreement between Amgen and Dr. Reddy's to settle the *Amgen Inc. v. Strides* (16-cv-881 (D. Del.)) litigation.

l. "Amgen-Aurobindo Agreement" means the agreement between Amgen and Aurobindo to settle the *Amgen, Inc. v. Aurobindo Pharma Ltd. et al.* (16-cv-853 (D. Del.)) litigation.

m. "Amgen-Macleods Agreements" means the agreement between Amgen and Macleods to settle the litigation *Amgen, Inc. v. Macleods* (17-cv-817 (D. Del.)) litigation.

n. "Amgen-Lupin Agreements" means the agreement between Amgen and Lupin to settle the litigation *Amgen, Inc. v. Lupin* (17-cv-816 (D. Del.) litigation.

o. "Amgen-Alkem Agreements" means the agreement between Amgen and Alkem to settle the litigation *Amgen, Inc. v. Alkem* (17-cv-815 (D. Del.) litigation.

p. "Amgen-Emcure Agreements" means the agreement between Amgen and Emcure to settle the litigation *Amgen, Inc. v. Emcure* (18-cv-1393 (D. Del.)) litigation.

L. A "Most Favored Nation" clause means any contract provision in which Amgen agreed to give any Generic Sensipar manufacturer the best terms it made or would make available to any other Generic Sensipar manufacturer.

M.       "Acceleration clause," means any clause in any Agreement between Amgen and a Generic Sensipar manufacturer providing that the Generic Sensipar manufacturer's entry into the market for Generic Sensipar would be advanced to an earlier date in the event that another Generic Sensipar manufacturer were to enter the market.

N.       "You" or "Your" means the party that was served with this subpoena, and their parents, subsidiaries, affiliates, and divisions; their predecessor and successor entities; and any of the foregoing entities' former or present officers, directors, owners, partners, employees, attorneys, agents, representatives, and all other persons occupying similar positions or performing similar functions or acting or purporting to act on their behalf