IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: SENSIPAR (CINACALCET HYDROCHLORIDE TABLETS) ANTITRUST LIGITATION | ) ) ) ) ) | MDL No. 19-2895-LPS |
| CIPLA LTD. and CIPLA USA, INC., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 19-044-LPS |
| AMGEN INC. and TEVA PHARMACEUTICALS USA, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendant Teva
Pharmaceuticals USA, Inc.*

OF COUNSEL:
Henninger S. Bullock
Richard A. Spehr
Karen W. Lin
MAYER BROWN
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500

Dated: January 10, 2020

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.     CIPLA HAS FAILED TO ESTABLISH THAT IT HAS STANDING. ........................... 2

    A.     Cipla Failed To Allege Constitutional Or Antitrust Injury. ................................... 2

    B.     Cipla Has Failed To Assert Antitrust Injury. ........................................................ 4

    C.     Cipla Is Not The Proper Plaintiff. ......................................................................... 6

II.    CIPLA FAILED TO STATE A CLAIM UNDER 15 U.S.C. § 1 ..................................... 6

III.   CIPLA'S STATE LAW CLAIMS SHOULD BE DISMISSED. ...................................... 9

    A.     Cipla Has Failed To State A Claim Under California Law. .................................... 9

    B.     Cipla Has Failed To State A Claim For Fraud. ...................................................... 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alta. Gas Chems. Ltd. v. E.I. Du Pont De Nemours & Co.*,
826 F.2d 1235 (3d Cir. 1987)........................................................................................6

*Amgen Inc. v. Amneal Pharms. LLC*,
2020 WL 62012 (Fed. Cir. Jan. 7, 2020) ......................................................................2

*Bolden v. Nat'l Fin. Servs. LLC*,
2005 WL 8175134 (D.N.J. May 23, 2005) ....................................................................4

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977)...................................................................................................4, 6

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011).........................................................................................7

*Cargill v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986)......................................................................................................4

*Cipla Ltd. v. Amgen Inc.*,
778 F. App'x 135 (3d Cir. 2019) .................................................................................3

*Clements v. Sanofi-Aventis, U.S., Inc.*,
111 F. Supp. 3d 586 (D.N.J. 2015) ..............................................................................4

*In re Dex Media*,
595 B.R. 19 (D. Del. 2018)..........................................................................................3

*FTC v. Actavis*,
570 U.S. 136 (2013)..........................................................................................1, 6, 7, 8

*In re Lipitor*,
868 F.3d 231 (3d Cir. 2017)......................................................................................8, 9

*Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)......................................................................................................5

*Minard Run Oil Co. v. U.S. Forest Serv.*,
549 F. App'x 93 (3d Cir. 2013) ...................................................................................3

*NCAA v. Bd. of Regents of Univ. of Okla.*,
468 U.S. 85 (1984)........................................................................................................7

*Penn. Emp., Benefit Tr. Fund v. Zeneca, Inc.*,
    710 F. Supp. 2d 458 (D. Del. 2010)........................................................................9

*REI Holdings, LLC v. LienClear – 0001, LLC*,
    2019 WL 3546881 (D. Del. Aug. 5, 2019) ...........................................................10

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011)....................................................................................2

*Standard Oil Co. (Ind.) v. United States*,
    283 U.S. 163 (1931)..............................................................................................7

*United States v. Singer Mfg. Co.*,
    374 U.S. 174 (1963)..............................................................................................8

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
    836 F.2d 173 (3d Cir. 1988)...........................................................................4, 10

## Statutes

15 U.S.C. § 1 ........................................................................................... *passim*

15 U.S.C. § 16 ...............................................................................................4

## Other Authorities

Fed. R. Civ. P. 9(b) .....................................................................................10

## SUMMARY OF ARGUMENT

This lawsuit should be over:  Cipla brought this action in January 2019, alleging that Teva's settlement of patent infringement litigation brought by Amgen violated the antitrust laws by excluding Cipla from the market for cinacalcet products.  But Cipla then entered the market in March 2019, and in May 2019, this Court held—based on arguments advanced by Cipla—that Teva's December 2018 launch immediately triggered Cipla's contractual right to launch, and that nothing Teva had done since affected that right.  The Third Circuit affirmed.

Despite Cipla's extensive efforts to secure them, these decisions are barely mentioned in Cipla's brief.  The reason is obvious:  the decisions contradict Cipla's argument that the Teva Agreement prevented Cipla from entering the market.  Those decisions, holding that Cipla was "authorized" to enter the market once Teva launched at-risk, and remained "authorized" notwithstanding the Teva Agreement, preclude Cipla from arguing that it has the injury necessary to establish constitutional or antitrust standing.

Cipla lacks antitrust standing for additional, independent reasons.  Its alleged injury is not an *antitrust* injury.  At most, Cipla alleges that it declined to enter the market because it was unsure of the terms of the agreement it negotiated with Amgen.  That is a contractual dispute, not an antitrust injury.  And Cipla's conclusory assertions that it is a proper plaintiff do not hold up in the face of either the remote connection between its alleged injury and the alleged violation, or the existence of actions by direct and indirect cinacalcet purchasers based on the same facts.

Even if Cipla's claims were not doomed by lack of standing, Cipla failed to state a claim under the Sherman Act.  Cipla fails to distinguish the Teva Agreement from the settlement agreements blessed by the Supreme Court in *FTC v. Actavis*.  The Teva Agreement did not involve any transfer of value from Amgen to Teva beyond the "commonplace" "settlement discount" in damages, which are not "subject to antitrust liability."  570 U.S. at 151-52.

Finally, if this Court dismisses the Sherman Act claim, it should dismiss Cipla's state law claims for lack of subject matter jurisdiction.  In any event, Cipla's California statutory claims fail for the same reasons its Sherman Act claim fails.  And Cipla abandons the fraud claim it pled, waiving any argument that it should not be dismissed.  Its attempt to revive that claim with a new, unpled theory is both too late and meritless.

## ARGUMENT

## I.   CIPLA HAS FAILED TO ESTABLISH THAT IT HAS STANDING.

Cipla's claims must be dismissed because it lacks constitutional and antitrust standing.

### A.   Cipla Failed To Allege Constitutional Or Antitrust Injury.

Teva's opening brief established that Cipla failed to allege any injury sufficient to support constitutional or antitrust standing.  Cipla claims it was injured because it was prevented from entering the market for a few weeks.  D.I. 252 ("Opp.") 5.[1]  But as Teva explained (D.I. 238 ("MTD") 9), Cipla's arguments to this Court and the Third Circuit, and those courts' rulings, preclude any such claim.  Cipla successfully argued that because Teva was found not to have infringed the '405 patent, Cipla was entitled to launch "irrespective of whether Teva 'has ceased or agreed to cease selling' Teva products."  Appellees Br. 32, No. 19-2017 (3d Cir.); D.I. 163 at

---

[1] Cipla now claims (Opp. 5) that it is threatened with future injury because Amgen is relying on Teva's "admission" of infringement in the patent appeal, which might result in a reversal or vacatur of the district court's finding of non-infringement.  But the outcome of that appeal will have no effect on Cipla's rights because the Federal Circuit has found that Piramal, which launched at risk, did not infringe the '405 patent.  *Amgen Inc. v. Amneal Pharms. LLC*, 2020 WL 62012 (Fed. Cir. Jan. 7, 2020).  In any event, injuries that are dependent on the "speculative, future actions" of third parties do not satisfy the Constitution's "injury-in-fact" requirements.  *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011).  "[O]ne cannot describe how the [plaintiffs] will be injured without beginning the explanation with the word 'if.'"  *Id.*  Here, Cipla's theory is that it will be injured "if" the Third Circuit decides at some point to reverse the district court's ruling and "if" this Court ultimately determines that Teva "has not ceased or agreed to cease selling" its generic product per § 5.6 of the Cipla Agreement.  That is not a cognizable injury.

9, 14, 19-20.  And this Court and the Third Circuit agreed, holding as a matter of law that Cipla was "authorized" to (1) launch the moment Teva did and (2) remain on the market even after the Teva Agreement, "without Amgen's interference."  778 F. App'x 135, 137, 140 (3d Cir. 2019). Thus, nothing restrained Cipla from entering the market once Teva launched.  It was Cipla's *choice* to wait until March 2019 to begin selling.  Opp. 5; 3/8/19 Hr'g Tr. 14.

Cipla's only response (Opp. 5) is a conclusory assertion that "[t]here is no inconsistency" between this Court's and the Third Circuit's prior rulings and Cipla's claim that Teva prevented it from entering the market in January 2019.  It offers no explanation for this statement—because none exists.  The inconsistency is apparent.  Cipla cannot assert one position to obtain relief, and then turn around and argue the exact opposite so that it can obtain additional, different relief. *See In re Dex Media*, 595 B.R. 19 (D. Del. 2018).  And this Court is bound by its and the Third Circuit's rulings that the Teva Agreement did not prevent Cipla from launching as law of the case.  *See Minard Run Oil Co. v. U.S. Forest Serv.*, 549 F. App'x 93, 97 (3d Cir. 2013).

To the extent Cipla's theory is that its injury is not an actual exclusion from the market, but rather having been misled into believing that it could not enter the market, that is a distinction without a difference.  Cipla argues that by stipulating that it infringed the '405 patent for purposes of settlement, Teva misled Cipla into believing its rights had not yet accrued.  Opp. 5.  But Cipla could not have been misled by anything Teva said in or about the Teva Agreement because—as Cipla, this Court, and the Third Circuit have all said—the Teva Agreement was irrelevant to, and did not hinder or otherwise affect, Cipla's right to sell.  Consequently, what was said about the Agreement was likewise irrelevant and could not have injured Cipla.

In any event, Cipla could not have been *misled* because nothing Teva said about the Agreement was inaccurate or misleading.  Cipla does not contest, and therefore waives any

argument in opposition to, Teva's showing (MTD 18) that Teva's statement that it had agreed to stop selling its generic product was true. Cipla now manufactures a new theory that it was misled by Teva's *admission of infringement* in the Teva Agreement. Opp. 5. But "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (brackets and quotation marks omitted); *see also Bolden v. Nat'l Fin. Servs. LLC*, 2005 WL 8175134, at *6 (D.N.J. May 23, 2005); *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 601 (D.N.J. 2015). Nor is there any merit to this argument in any event: Cipla could not have relied on the admission because (1) that admission had no legal effect on Cipla's right to launch under the Cipla Agreement,[2] and (2) Cipla did not know the terms of the Agreement until after this action was filed. Accordingly, Cipla's decision to refrain from launching once Teva launched could not have been based on Teva's admission of infringement.

**B.    Cipla Has Failed To Assert Antitrust Injury.**

Teva also showed that even if Cipla's forbearance from entering the market could constitute an injury-in-fact, it is not an *antitrust* injury—that is, one that "the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).[3]

---

[2] To the extent Cipla intended to claim that it relied on the motion for an indicative ruling, that was not pled. Furthermore, the motion for an indicative ruling was also not filed until after Cipla commenced this action. No. 16-853, D.I. 412. Accordingly, Cipla could not have relied on that motion in deciding not to launch and instead to file this action.

[3] Although Cipla claims that the standing requirements are "less stringent" for its claim for injunctive relief under 15 U.S.C. § 16 (Opp. 8), the Supreme Court has made clear that a § 16 plaintiff "must still allege an injury of the type the antitrust laws were designed to prevent." *Cargill v. Monfort of Colo., Inc.*, 479 U.S. 104, 111 (1986).

Cipla has abandoned the allegations in its complaint that the Agreement was unlawful because it "restrict[s] supplies of, and . . . maintain[s] artificially high prices for, Cinacalcet Products" (D.I. 73 ¶ 53). That is unsurprising because the Supreme Court has held that competitors are not injured by such actions. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582-83 (1986). Instead, Cipla now argues that exclusion of a competitor is "a classic form of antitrust injury." Opp. 6. As explained above (at 2-3), however, Cipla was *not* excluded. At most, Cipla complains that it was "misled and deterred" from entering the market. Opp. 5. Cipla offers no authority that such a broad and ambiguous complaint constitutes an antitrust injury, nor can it. Cipla's claim is that it refrained from entering the market because it was uncertain about how to interpret its own contract. MTD 4-5. Indeed, the very genesis of this action was Cipla's claim seeking a declaration that it was entitled to launch under the terms of the Cipla Agreement. Cipla offers no response to Teva's exposure of the contractual nature of its claim, nor does it offer any response to the authorities cited by Teva establishing that such contractual disputes are of no concern under the antitrust laws. MTD 10-11.

Additionally, Cipla's alleged injury did not "flow[] from that which makes defendants' acts unlawful." Cipla provides *no* connection between Teva's and Amgen's alleged intent to exclude Cipla and Cipla's absence from the market—because there is none. Cipla was *already* excluded from the market before Teva did anything. And it was excluded because it previously entered into a settlement agreement with Amgen—like the one between Amgen and Teva that Cipla now challenges. Cipla would have been in the same position had Teva simply not acted at all.[4] Accordingly, any injury that Cipla now claims it suffered did not flow from anticompetitive

---

[4] Additionally, had Cipla not alleged that Teva and Amgen entered into the settlement agreement with an intent to exclude Cipla, Cipla still would have been in the same position. In other words,

(cont'd)

conduct, but rather its own negotiation of contractual rights.  *See, e.g., Brunswick Corp.*, 429 U.S. at 487-88 (1977) (no antitrust injury where plaintiffs "would have suffered the identical 'loss'" regardless of alleged antitrust violation); *Alta. Gas Chems. Ltd. v. E.I. Du Pont De Nemours & Co.*, 826 F.2d 1235, 1240 (3d Cir. 1987) (similar).

### C.    Cipla Is Not The Proper Plaintiff.

Teva further showed that—even if Cipla had alleged an antitrust injury—it was not a proper plaintiff to challenge the Teva Agreement.  MTD 12-13.  Cipla offers only cursory denials that the relevant factors—including the causal connection between the alleged violation and Cipla's alleged injury, the existence of more direct victims, and the potential for duplicative or complex apportionment of damages—counsel against finding that Cipla has antitrust standing. It offers no explanation of the causal mechanism between Teva's actions and its asserted injury. Cipla also fails to even acknowledge that there have been actions brought by purchasers of cinacalcet products—who are more direct victims of the alleged antitrust violations and whose existence creates the potential for duplicative and complex apportionment of damages.

For any and all of the reasons above, Cipla's claims should be dismissed.

## II.    CIPLA FAILED TO STATE A CLAIM UNDER 15 U.S.C. § 1.

Even if Cipla had established constitutional and antitrust injury, Teva showed that, under the Supreme Court's *Actavis* decision, the Teva Agreement is lawful and cannot give rise to a violation of § 1 of the Sherman Act.  Cipla's attempts to escape this conclusion are unavailing.

---

(… cont'd)

if Teva and Amgen had entered into the settlement agreement without an intent to exclude Cipla (as Teva maintains it did), the effects of that settlement on Cipla would have been the same. Cipla's alleged injury thus did not "flow" from the allegedly anticompetitive conduct.

First, Cipla tries to shirk its burden to plead a restraint of trade by claiming that it is *defendants'* burden to establish an "affirmative defense." Opp. 9. But the cases Cipla on which relies stand only for the proposition that defendants must establish a restraint's reasonable nature only after the underlying restraint has been plausibly alleged. *See NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 113 (1984) (cited at Opp. 9). Cipla unquestionably bears the burden of first alleging facts sufficient to establish that a restraint of trade exists, and it has failed to do so. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

Second, Cipla claims that *Actavis* does not apply here because Cipla alleges that Teva's product does not embody the claimed invention of the '405 Patent. Opp. 9. But *Cipla's* opinion is irrelevant. What matters is that there is ongoing litigation in which the parties dispute the issue. The Supreme Court has long recognized that the parties may settle that dispute without triggering antitrust scrutiny, except in limited circumstances such as when the settlement involves a reverse payment settlement. *FTC v. Actavis*, 570 U.S. 136, 152 (2013) (recognizing that patent infringement litigation settlements are typically "not . . . subject to antitrust liability"); *Standard Oil Co. (Ind.) v. United States*, 283 U.S. 163, 171 (1931) ("[A] settlement by agreement, rather than litigation, is not precluded by the [Sherman] Act.").

Cipla did not allege a reverse payment, and there was none. Cipla now suggests that because Teva was not required to pay Amgen *all* of the revenues Teva made during its at-risk launch, Amgen made a "payment" to Teva. Opp. 9-10. Cipla simply restates exactly what makes this settlement one *Actavis* recognized as "commonplace": "a party with a claim . . . for damages receives a sum equal to or less than the value of its claim." 570 U.S. at 152. Indeed, the Court recognized that although this could be characterized as an "implicit net payment" in the amount of the "settlement discount," it was not a reverse payment. *Id.* at 151-52.

Cipla tries to escape *Actavis* by arguing that the amount of the "settlement discount" in this case was outside the "range of 'familiar settlement forms'" because it was greater than "any conceivable 'traditional settlement considerations, such as avoided litigation costs or fair value for services.'" Opp. 10 (quoting *Actavis*, 570 U.S. at 156). But Cipla puts the cart before the horse; the *Actavis* court made these statements *only after* it determined that a reverse payment had been made. The amount of damages parties are willing to pay and accept in a non-reverse-payment settlement is not constrained by these factors. Most notably, the parties' assessment of and appetite for the risks of losing play a substantial role in determining that amount. Whether other parties or the courts agree with that assessment, it is a decision for the parties themselves, and they cannot be compelled either to take or to value risks in a different manner.

The cases relied on by Cipla (Opp. 10)—*Singer* and *In re Lipitor*—are inapposite. Neither *Singer* nor *In re Lipitor* involved a settlement where parties to a patent infringement litigation settled by having the alleged infringer pay a portion of the alleged damages to the patentee. Indeed, *Singer* did not involve patent litigation at all and therefore has no bearing on this case. *Singer* involved a series of transactions in which three companies, each possessing different patents, granted rights to each *other's'* patents and agreed to have the company in the strongest position prosecute the patents. 374 U.S. 174, 177-88 (1963). In other words, the companies pooled their patents to give each other broader rights than each of the respective patents gave each patent holder. Each company received a benefit unrelated to its own patent.

*In re Lipitor*, 868 F.3d 231 (3d Cir. 2017), is similarly inapposite. That case involved a settlement where the patent holder conferred value on the alleged infringer beyond the traditional settlement discount—and indeed, conferred value that was completely unrelated to the patent at issue. There, the patent holder released the alleged infringer not only from claims in connection

8

with the product at issue in the litigation, but also in connection with *different* litigation relating to a *different* product and patent.  *Id.* at 244-45, 253.  Cipla has failed to allege (and cannot allege) that Teva's settlement with Amgen involved any such transfer of value unrelated to the patent being litigated and thus cannot argue that the settlement violates the antitrust laws.

## III.    CIPLA'S STATE LAW CLAIMS SHOULD BE DISMISSED.

Cipla does not dispute that this Court should dismiss its state law claims for lack of subject matter jurisdiction if the Court dismisses Cipla's federal law claims.  Moreover, it failed to show that those claims could survive a motion to dismiss.

### A.    Cipla Has Failed To State A Claim Under California Law.

Cipla does not dispute that its California state law claim lives or dies with its federal antitrust claim.  Accordingly, for the reasons that Cipla's Sherman Act claim should be dismissed, so too should its California state law claims.

### B.    Cipla Has Failed To State A Claim For Fraud.

Cipla tries to rewrite its complaint yet again when it discusses its fraud claim.  In its complaint, Cipla alleged that it detrimentally relied on Teva's and Amgen's statements that Teva had agreed to stop selling its generic product.[5]  D.I. 73 ¶¶ 18-20, 24.  Teva demonstrated that those statements cannot support a claim for fraud because they were not false.  MTD 20.

In the face of this manifest implausibility of its claim, Cipla abandons its allegations and waives any argument that the statements that Teva agreed to stop selling its product were fraudulent.  Instead, Cipla now argues that Teva made a false representation by agreeing to

---

[5] Cipla did not identify in its complaint under what state law it was asserting its fraud claim.  It now states that its fraud claim is under California law.  Opp. 15.  But there is no basis for applying California law to alleged statements made outside of California by Teva, a non-California corporation, which Cipla, another non-California corporation, claims impacted it.  *Cf. Penn. Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466-68 (D. Del. 2010).

stipulate to an admission of infringement in the Teva Agreement, and that Cipla relied on that representation to its detriment. Opp. 14. That argument suffers from several defects.

First, Cipla did not plead this claim. Rule 9(b) requires fraud to be alleged with particularity; a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *REI Holdings, LLC v. LienClear – 0001, LLC*, 2019 WL 3546881, at *5 (D. Del. Aug. 5, 2019). Here, the *only* allegedly fraudulent statements on which Cipla claims it relied were (1) the press releases announcing that Teva agreed to stop selling its product as part of the settlement, and (2) the letter from Amgen to Cipla in which Amgen stated that Teva had agreed to stop selling its product. D.I. 73 ¶¶ 24, 67-68. Having failed to plead that Teva's admission of infringement for purposes of the settlement was a false statement on which it relied, Cipla cannot now rely on that statement as a basis for its fraud claim. *See Zimmerman*, 836 F.2d at 181.

Second, as explained *supra* at 4, Cipla could not have relied on Teva's admission of infringement because it did not know of that admission until *after* it had already declined to launch and instead filed this lawsuit. Even once Cipla learned of the admission, it continued to argue that it had the right to launch to this Court and the Third Circuit; it was in no way "misled" that it did not have the right to launch by Teva's admission. And in fact, Cipla disclaimed any reliance on Teva's admission by alleging that it would have started selling if it had not been for Amgen's January 4, 2019 letter. D.I. 73 ¶ 68. Cipla's fraud claim must be dismissed.

## CONCLUSION

This Court should dismiss the complaint. And because Cipla cannot cure its lack of standing or the fact that the Teva Agreement is not a violation of § 1 of the Sherman Act, it should be denied leave to replead.

/s/ Karen E. Keller

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendant Teva*
*Pharmaceuticals USA, Inc.*

OF COUNSEL:
Henninger S. Bullock
Richard A. Spehr
Karen W. Lin
MAYER BROWN
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500

Dated: January 10, 2020