IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: SENSIPAR (CINACALCET HYDROCHLORIDE TABLETS) ANTITRUST LITIGATION | MDL No. 19-2895 (LPS) |
| THIS DOCUMENT RELATES TO:<br><br>ALL INDIRECT PURCHASER ACTIONS | C.A. No. 19-369 (LPS)<br>C.A. No. 19-1461 (LPS) |

**AMGEN INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
INDIRECT PURCHASER PLAINTIFFS'
SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant Amgen, Inc.*

OF COUNSEL

Eric J. Stock
Nathan Strauss
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 571-2900

March 30, 2021

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS ............................................................ 1

SUMMARY OF ARGUMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 3

LEGAL STANDARD .............................................................................................. 4

ARGUMENT .......................................................................................................... 4

    I.    This Court Should Decide Now that Named Plaintiffs Lack Standing to Press Claims Except in the Fifteen States Where They Allege Standing ................................ 4

        A.    Named Plaintiffs Lack Standing to Assert Claims Outside Their States of Injury ....................................................................................... 5

        B.    The Standing Issue Here Cannot Be Deferred to the Class Certification Decision ............................................................................ 8

    II.    Many of the Claims Named Plaintiffs Have Standing to Bring Have Fatal Flaws ....... 10

        A.    Antitrust Statutes That Do Not Apply to Unilateral Conduct .......................... 10

        B.    Statutes That Prohibit the Claims Brought By Named Plaintiffs Here ........... 10

        C.    Unjust Enrichment Claims Seeking To Circumvent Statutory Prohibitions ................................................................................. 13

        D.    Unjust Enrichment Claims in States Requiring a Direct Benefit .................... 14

        E.    Unjust Enrichment as a Standalone Claim Under California Law ................... 14

    III.    There Are Many Additional Flaws in Claims for Which EPPs Lack Standing ........... 14

        A.    Statutes That Prohibit the Claims Brought By Named Plaintiffs Here ........... 15

        B.    Antitrust Statutes That Do Not Apply to Unilateral Conduct .......................... 16

        C.    Antitrust Statutes That Apply Only to Conduct That Occurred in the State ....................................................................................... 16

        D.    Unjust Enrichment Claims Seeking To Circumvent Statutory Prohibitions ................................................................................. 17

**TABLE OF CONTENTS** *(continued)*

Page

E.  Unjust Enrichment Claims in States Requiring a Direct Benefit ..................... 17

IV.  Unjust Enrichment Claims That Duplicate Statutory Claims Should Be Dismissed ................................................................................................................... 19

CONCLUSION.............................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A & M Supply Co. v. Microsoft Corp.*,
  2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008)..................................................18

*AAA Haw., LLC v. Haw. Ins. Consultants, Ltd.*,
  2008 WL 4907976 (D. Haw. Nov. 12, 2008) ........................................................19

*In re Aftermarket Filters Antitrust Litig.*,
  2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) ...........................................................18

*In re Aggrenox Antitrust Litig.*,
  2016 WL 4204478 (D. Conn. Aug. 9, 2016) ..........................................................15

*In re Aggrenox Antitrust Litig.*,
  94 F. Supp. 3d 224 (D. Conn. 2015)..........................................................1, 12, 13

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................................9

*Apache Corp. v. MDU Res. Grp., Inc.*,
  603 N.W.2d 891 (N.D. 1999) .................................................................................18

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
  802 F. Supp. 2d 1070 (N.D. Cal. 2011) .................................................................19

*Archer v. Holmes*,
  2018 WL 534475 (N.D. Ga. Jan. 23, 2018).............................................................18

*In re Asacol Antitrust Litig.*,
  2016 WL 4083333 (D. Mass. July 20, 2016)...............................................11, 12, 15

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018)......................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................4

*Bandy v. Gibson*,
  2017 WL 3207068 (N.C. Super. Ct. July 26, 2017) ...............................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007).................................................................................................4

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Block v. Jaguar Land Rover N. Am., LLC*,
  2016 WL 3032682 (D.N.J. May 26, 2016) ............................................................14

*California v. Infineon Techs. AG*,
  531 F. Supp. 2d 1124 (N.D. Cal. 2007) ..............................................................16

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
  2015 WL 5166014 (E.D. Tenn. June 24, 2015)......................................................17

*In re Chocolate Confectionary Antitrust Litig.*,
  749 F. Supp. 2d 224 (M.D. Pa. 2010) ..................................................................19

*Commonw. Elec. Inspection Servs. v. Town of Clarence*,
  776 N.Y.S.2d 687 (N.Y. App. Div. 2004) ............................................................10

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006).......................................................................................5, 7

*Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc.*,
  2011 WL 2893629 (M.D. Ala. July 19, 2011)........................................................18

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
  903 F. Supp. 2d 198 (S.D.N.Y. 2012)..................................................................19

*Dimidowich v. Bell & Howell*,
  803 F.2d 1473 (9th Cir. 1986) ..........................................................................10

*In re Ditropan XL Antitrust Litig.*,
  529 F. Supp. 2d 1098 (N.D. Cal. 2007) ..............................................................10

*Duquesne Light Co. v. EPA*,
  166 F.3d 609 (3d Cir. 1999)................................................................................7

*Effler v. Pyles*,
  380 S.E.2d 149 (N.C. Ct. App. 1989)..................................................................18

*In re EpiPen Mktg., Sales Practices & Antitrust Litig.*,
  336 F. Supp. 3d 1256 (D. Kan. 2018)..................................................................10

*In re Express Scripts, Inc., Pharm. Benefits Mgmt. Litig.*,
  2006 WL 2632328 (E.D. Mo. Sept. 13, 2006)........................................................12

*Fenerjian v. Nongshim Co.*,
  72 F. Supp. 3d 1058 (N.D. Cal. 2014) ................................................................14

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Flecha v. Medicredit, Inc.*,
    946 F.3d 762 (5th Cir. 2020) ...................................................9

*In re Flonase Antitrust Litig.*,
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ....................................13, 15, 18

*In re Ford Tailgate Litig.*,
    2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ..........................19

*In re Gen. Motors LLC Ignition Switch Litig.*,
    257 F. Supp. 3d 372 (S.D.N.Y. 2017) .................................18, 19

*In re Generic Pharm. Pricing Antitrust Litig.*,
    368 F. Supp. 3d 814 (E.D. Pa. 2019) ..................................4, 9, 12, 15

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ........................................................1

*In re Insulin Pricing Litig.*,
    2019 WL 643709 (D.N.J. Feb. 15, 2019) ...............................7, 9

*J.P. Morgan Chase Bank, N.A. v. Leigh*,
    2011 WL 4351584 (D.R.I. Aug. 23, 2011), *rec. adopted*, 2011 WL 4351561
    (D.R.I. Sept. 15, 2011) ....................................................19

*Johnson v. Fankell*,
    520 U.S. 911 (1997) ........................................................4

*Kessel v. Monongalia Cnty. Gen. Hosp. Co.*,
    648 S.E.2d 366 (W. Va. 2007) ..........................................16

*Kopel v. Kopel*,
    229 So. 3d 812 (Fla. 2017) ..............................................14

*Langan v. Johnson & Johnson Consumer Cos.*,
    897 F.3d 88 (2d Cir. 2018) ..............................................7

*Lewis v. Casey*,
    518 U.S. 343 (1996) ........................................................5

*Licul v. Volkswagen Grp. of Am., Inc.*,
    2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) ..........................19

*In re Lidoderm Antitrust Litig.*,
    103 F. Supp. 3d 1155 (N.D. Cal. 2015) ...............................13, 14, 17

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Lincoln Land Co. v. LP Broadband, Inc.*,
  408 P.3d 465 (Idaho 2017), *rec. adopted*, 400 F. Supp. 3d at 443–44 ...................................18

*In re Lipitor Antitrust Litig.*,
  336 F. Supp. 3d 395 (D.N.J. 2018) ..........................................................................11, 15

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
  2017 WL 3131977 (D.N.J. July 20, 2017)...................................................................8

*Long v. Se. Pa. Transp. Auth.*,
  903 F.3d 312 (3d Cir. 2018)..........................................................................................6

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)......................................................................................................4

*In re Magnesium Oxide Antitrust Litig.*,
  2011 WL 5008090 (D.N.J. Oct. 20, 2011)...................................................................9

*Morrison v. YTB Int'l, Inc.*,
  649 F.3d 533 (7th Cir. 2011) .......................................................................................8

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015).................................................................................5, 7, 8

*In re Niaspan Antitrust Litig.*,
  2015 WL 8150588 (E.D. Pa. Dec. 8, 2015)...........................................................7, 14

*In re Niaspan Antitrust Litig.*,
  42 F. Supp. 3d 735 (E.D. Pa. 2014) .....................................................................12, 13

*In re Novartis & Par Antitrust Litig.*,
  2019 WL 3841711 (S.D.N.Y. Aug. 15, 2019)..........................13, 14, 17, 18, 19, 20

*Opelika Prod. Credit Ass'n, Inc., v. Lamb*,
  361 So.2d 95 (Ala. 1978).............................................................................................17

*In re Packaged Seafood Prods. Antitrust Litig.*,
  242 F. Supp. 3d 1033 (S.D. Cal. 2017).......................................................................14

*Parm v. Nat'l Bank of Cal., N.A.*,
  242 F. Supp. 3d 1321 (N.D. Ga. 2017) .......................................................................18

*Pixler v. Huff*,
  2011 WL 5597327 (W.D. Ky. Nov. 17, 2011) ...........................................................18

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Ponzio v. Mercedes-Benz USA, LLC,*
    2020 WL 1183733 (D.N.J. Mar. 11, 2020)..........................................................................6, 7

*Preiser v. Newkirk,*
    422 U.S. 395 (1975)...............................................................................................................10

*In re Relafen Antitrust Litig.,*
    221 F.R.D. 260 (D. Mass. 2004)...........................................................................................16

*In re Remicade Antitrust Litig.,*
    345 F. Supp. 3d 566 (E.D. Pa. 2018) ....................................................................................17

*Rivers v. Amato,*
    2001 WL 1736498 (Me. Super. Ct. June 22, 2001)..............................................................18

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010) .............................................................................................................11

*Sperry v. Crompton Corp.,*
    8 N.Y.3d 204 (N.Y. 2007) ...................................................................................................14

*New York ex rel. Spitzer v. Daicel Chem Indus., Ltd.,*
    42 A.D.3d 301 (N.Y. App. Div. 2007) .................................................................................14

*Standard Oil Co. of Ky. v. State,*
    65 So. 468 (Miss. 1914)........................................................................................................16

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,*
    171 F.3d 912 (3d Cir. 1999)..................................................................................................13

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1988)...............................................................................................................6, 7

*Stutzle v. Rhone-Poulenc S.A.,*
    2003 WL 22250424 (Pa. Ct. Com. Pl. Sept. 26, 2003).........................................................14

*In re Suboxone Antitrust Litig.,*
    64 F. Supp. 3d 665 (E.D. Pa. 2014) .......................................................................................9

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.,*
    2021 WL 100204 (D.N.J. Jan. 12, 2021) ...............................................................................5

*Warth v. Seldin,*
    422 U.S. 490 (1975).............................................................................................................8, 9

# TABLE OF AUTHORITIES *(continued)*

Page(s)

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009) .................................................................................7

*In re Wellbutrin XL Antitrust Litig.*,
   756 F. Supp. 2d 670 (E.D. Pa. 2010) .......................................................................15

*Wheeler v. Travelers Ins. Co.*,
   22 F.3d 534 (3d Cir. 1994) .......................................................................................8

*Winters v. Ocean Spray Cranberries, Inc.*,
   296 F. Supp. 3d 311 (D. Mass. 2017) .......................................................................15

*In re Zetia (Ezetimibe) Antitrust Litig.*,
   2019 WL 1397228 (E.D. Va. Feb. 6, 2019), *rec. adopted in relevant part*,
   400 F. Supp. 3d 418 (E.D. Va. 2019) ................................................................9, 18

## Statutes

740 Ill. Comp. Stat. 10/7 ..................................................................................................15

Ariz. Rev. Stat. § 44 ..........................................................................................................12

Cal. Bus. & Prof. Code § 16700 .......................................................................................10

Haw. Rev. Stat. § 480 ..................................................................................................11, 12

Mass. Gen. Laws ch. 93A § 9 ...........................................................................................15

Massachusetts General Laws .............................................................................................15

Miss. Code Ann. § 75 ........................................................................................................16

Mo. Rev. Stat. § 407 ..........................................................................................................12

N.Y. Gen. Bus. L. § 340 ....................................................................................................10

Nev. Rev. Stat. § 598A .................................................................................................12, 16

S.D.C.L. § 37 .....................................................................................................................16

Tenn. Code Ann. § 47 ........................................................................................................10

Utah Code § 76 ..................................................................................................................12

Vt. St. Ann. tit. 9 § 2451a ..................................................................................................15

W. Va. Code § 47 ...............................................................................................................16

## NATURE AND STAGE OF PROCEEDINGS

Amgen Inc. hereby moves to dismiss the end payor plaintiffs' Second Amended Consolidated Class Action Complaint ("EPP Compl.") under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim.

## SUMMARY OF ARGUMENT

Four organizations that paid for generic or branded Sensipar in fifteen states are asserting claims for damages in fifty states and territories on behalf of a class of indirect purchasers of those products. This overreach is EPPs' attempt to bring the type of uniform, national claim under the laws of individual states that is unavailable to indirect purchasers under federal law. Federal antitrust law precludes indirect purchasers from recovering damages because such recovery would present "a serious risk of multiple liability for defendants" and add "whole new dimensions of complexity to treble-damages suits [which would] seriously undermine their effectiveness." *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 730, 737 (1977). Here, while the EPPs seek only injunctive relief under federal antitrust law, they stitch together a "Frankensteinian equivalent" of a federal claim for damages by alleging more than one hundred antitrust, consumer protection, and unjust enrichment claims under the laws of fifty states and territories. *See* EPP Compl. ¶¶ 294–427; *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 255 (D. Conn. 2015).

The legal theories for all of the EPPs' claims are the same as the Direct Purchaser Plaintiffs'—that Defendants entered into a "reverse payment" settlement (despite the absence of any payment to Defendant Teva) and that patent-litigation settlement agreements between Defendant Amgen Inc. and companies that applied to the FDA to sell generic Sensipar unlawfully delayed the market entry of generic Sensipar. *Compare* EPP Compl. ¶¶ 275–292 *with* DPP Compl. ¶¶ 299–319. All of the EPPs' claims fail because of the dispositive flaws explained in Amgen's Brief in Support of its Motion to Dismiss Direct Purchaser Plaintiffs' Amended Consolidated Complaint

(filed concurrently herewith), which applies to both the DPPs' and EPPs' complaints and is incorporated herein by reference. Accordingly, the EPP Complaint should be dismissed in its entirety. This motion explains *additional* dispositive flaws in nearly all of EPPs' state-law claims.

*First*, the named plaintiffs lack Article III standing to bring claims under the laws of any states in which they did not pay for the products at issue, even though they bring the claims in a representative capacity on behalf of absent class members. The standing of the named plaintiffs is what matters, and they lack redressable injury in any state in which they did not pay for the products at issue. Thus, dismissal for lack of subject matter jurisdiction is required at this threshold point in the case for all state-law claims outside of the fifteen states in which named plaintiffs allege standing.

*Second*, state-specific flaws require dismissal of many of EPPs' claims in the states in which they made payments. EPPs cannot bring a monopolization claim against Amgen under California, New York or Tennessee's antitrust statutes because those statutes do not apply to unilateral conduct. Statutory limitations on who can bring the asserted claims preclude EPPs' statutory claims under Hawaii, Missouri, and Utah law. And multiple flaws doom the unjust enrichment claims, specifically those brought under the laws of Alaska, Florida, Hawaii, Missouri, New Jersey, New York, Pennsylvania, South Carolina, and Utah.

*Third*, although the Court lacks subject matter jurisdiction to address the merits of claims alleged under the laws of states in which the named plaintiffs lack standing, many of those claims have additional fatal flaws that would warrant dismissal.

*Fourth*, to the extent the Court holds that the EPPs have plausibly pleaded a state-law statutory claim, the Court should dismiss that state's unjust enrichment claim as duplicative.

Accordingly, Amgen respectfully requests that the Court dismiss EPPs' Complaint in its

entirely or, at a minimum, dismiss all of EPPs' claims except the few not precluded by lack of standing or state-specific grounds for dismissal.[1]

## STATEMENT OF FACTS

The factual allegations that form the basis of the claims in EPPs' complaint substantially parallel the facts alleged in the DPPs' complaint, and Amgen incorporates that discussion by reference herein.   The relevant facts for this motion are that EPPs' three named plaintiffs, Teamsters Local 237 Welfare Fund, Teamsters Local 237 Retirees' Benefit Fund, and UFCW Local 1500 Welfare Fund, assert claims under the laws of Puerto Rico, District of Columbia, and all states except Indiana and Ohio.   However, those plaintiffs allege they "indirectly purchased, paid, or reimbursed for some or all of the purchase price for Sensipar and/or its AB-rated generic equivalents" in less than a third of those states (fifteen in all):  Alaska, Arizona, California, Florida, Hawaii, Indiana, Maryland, Missouri, New Jersey, New York, Oregon, Pennsylvania, South Carolina, Tennessee, and Utah.   EPP Compl. ¶¶ 19–21 (alleging purchases in Indiana but not bringing a claim in that state, presumably because Indiana follows *Illinois Brick*).

EPPs' first three claims for relief allege violations of Sherman Act and thus seek only injunctive relief due to *Illinois Brick*'s prohibition on federal antitrust damages claims by indirect purchasers.  *Id.* ¶¶ 275–302.  EPPs' Fourth and Fifth Claims for Relief allege that all defendants participated in concerted anticompetitive conduct in violation of twenty-eight states' statutes, including eight where named plaintiffs made payments:  Arizona, California, Hawaii, Maryland, New York, Oregon, Tennessee, and Utah (*id.* ¶¶ 309, 321), while EPPs' Sixth Claim for Relief

---

[1] Setting aside the flaws in all claims that are explained in the Motion to Dismiss the DPPs' Complaint, the only state law claims that are not the subject of this motion are the Florida consumer protection claim; the California consumer protection claim and antitrust claims as to concerted conduct; New York and Tennessee antitrust claims as to concerted conduct; and the Arizona, Maryland and Oregon claims.

alleges monopolization against Amgen under the same statutes.  *Id.* ¶ 330.  EPPs' Seventh Claim for Relief alleges violations of three states' consumer protection statutes, including Florida and Missouri.  *Id.* ¶¶ 336–62.  EPPs' Eighth Claim for Relief claims unjust enrichment in fifty states and territories, including fifteen where named plaintiffs made payments.  *Id.* ¶¶ 363–426.

## LEGAL STANDARD

To withstand a Rule 12(b)(1) motion to dismiss, a plaintiff must sufficiently allege the three elements of constitutional standing: an injury-in-fact, which is fairly traceable to the challenged conduct, and redressable by a favorable decision.  *In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 828 (E.D. Pa. 2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  In ruling on a plaintiff's state-law claims, federal courts follow the rulings of the respective state's highest appellate courts. *See, e.g.*, *Johnson v. Fankell*, 520 U.S. 911, 916 (1997).  If a claim is not plausibly pled, dismissal is appropriate because "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citation omitted).

## ARGUMENT

**I.     This Court Should Decide Now that Named Plaintiffs Lack Standing to Press Claims Except in the Fifteen States Where They Allege Standing**

Two straightforward principles established by the Supreme Court require dismissal of two thirds of the EPPs' state-law claims for lack of subject-matter jurisdiction:  "first, a plaintiff must demonstrate standing for each claim he seeks to press; and second, class actions do not change the

requirements of standing." *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 2021 WL 100204, at *14 (D.N.J. Jan. 12, 2021) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 337 (2006) and *Lewis v. Casey*, 518 U.S. 343, 357 (1996), and dismissing claims in thirty-one states and territories where no named plaintiff alleged standing).

Here, named plaintiffs allege injury only from payments they made in fifteen states.  EPP Compl. ¶¶ 19–20.  They do not plead that they incurred an injury in any other state and cannot show that any other state's law could redress the out-of-state injury they allege.  Thus, they have not demonstrated standing for each claim they seek to press, and dismissal is required for all claims in states outside of the fifteen in which named plaintiffs allegedly made payments.

EPPs nonetheless claim that named plaintiffs have sufficient standing to assert all of the claims, regardless of the state, on behalf of absent class members.  Moreover, EPPs have suggested that, at a minimum, this Court should defer its standing decision until the class certification stage. *See* D.I. 76 at 3–4 (EPP Opp. to Mot. to Dismiss).  Neither argument has merit.

### A. Named Plaintiffs Lack Standing to Assert Claims Outside Their States of Injury

The Third Circuit has followed Supreme Court precedent in holding that "[s]tanding requires that the party seeking to invoke federal jurisdiction 'demonstrate standing for each claim he seeks to press.'" *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) (quoting *DaimlerChrysler*, 547 U.S. at 352).  *Neale* was a class action case and made clear that *DaimlerChrysler* applies equally in the class action context.  *Neale*, 794 F.3d at 359 ("In the context of a class action, Article III must be satisfied by at least one named plaintiff." (citation and quotation marks omitted)).  The Third Circuit recently applied the standing principles from *DaimlerChrysler* and *Neale* to affirm dismissal of one of two claims on the ground that the named plaintiffs lacked injury related to that particular claim, despite finding that the named plaintiffs

"have standing to assert their first claim" and that "unnamed class members" allegedly had standing for the dismissed claim. *See Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 323–25 (3d Cir. 2018); *see also Ponzio v. Mercedes-Benz USA, LLC*, 2020 WL 1183733, at *13–14 (D.N.J. Mar. 11, 2020) (applying *DaimlerChrysler* and *Neale* to dismiss claims for which named plaintiff lacked standing).

Despite these binding principles of standing, EPPs have argued that "their Sensipar purchases in certain states should end the Article III inquiry" as to their "standing to pursue the claims of absent class members that made purchases in other states." D.I. 76 at 3. EPPs believe that "a plaintiff's ability to represent the claims held by absent class members is not 'an Article III jurisdictional issue.'" *Id.*

The only support EPPs have mustered is an inapposite Supreme Court footnote which included the statement "the Article III requirement of remediable injury in fact . . . has nothing to do with the text of the statute relied upon." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1988); D.I. 76 at 3. *Steel Co.* was not a class action case and the footnote did not concern class actions or absent class members. The footnote was the Court's response to Justice Stevens's disagreement with the holding that courts may not "determine whether a cause of action exist[s] before determining that the plaintiff ha[s] Article III standing." *Steel Co.*, 523 U.S. at 96–97 & n.2. Part of the Court's response was that whether a plaintiff has suffered an Article III *injury* "has nothing to do with the text of the statute relied upon." *Id.*

This footnote should not be misinterpreted as holding that *standing overall* has nothing to do with the statute under which a claim is brought, as EPPs apparently believe. *See* D.I. 76 at 3. That would give anyone alleging injury from any conduct free reign to challenge that conduct by suing under any statute in any state. *Steel Co.* itself precludes EPPs' interpretation because the

Court *did* consider the text of statutes in determining that the plaintiff had no standing.  The Court analyzed whether "the complaint fails the third test of standing, redressability," by considering whether two separate statutory provisions could provide the plaintiff redress:  civil penalties under 42 U.S.C. § 11045(c) and costs under § 11046(f).  *See* 523 U.S. at 105–07.  Finding that neither statute's text allowed recovery, the Court held that plaintiff lacked redressability and thus standing. *Id.*  Applying *Steel Co.* to named plaintiffs' out-of-state claims, they have no redressability, and thus no standing, because they can receive no redress from the laws of states in which they suffered no injury.  *See also Duquesne Light Co. v. EPA*, 166 F.3d 609, 613 (3d Cir. 1999) (no redressability where the applicable EPA law prohibited the court from ordering the relief sought).

Courts that properly consider the relevant standing principles invariably rebuff what EPPs attempt to do here:  press a claim on which no named plaintiff has standing.  *See, e.g.*, *Ponzio*, 2020 WL 1183733, at *13–14; *In re Insulin Pricing Litig.*, 2019 WL 643709, at *17 (D.N.J. Feb. 15, 2019); *In re Niaspan Antitrust Litig.*, 2015 WL 8150588, at *3 (E.D. Pa. Dec. 8, 2015); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152–53 (E.D. Pa. 2009) (holding that "a plaintiff whose injuries have no causal relation to Pennsylvania, or for whom the laws of Pennsylvania cannot provide redress, has no standing to assert a claim under Pennsylvania law, although it may have standing under the law of another state").

Although EPPs can cite opinions that allowed named plaintiffs to press claims on which they lack standing, those opinions contradict the bedrock principle that "the party seeking to invoke federal jurisdiction [must] 'demonstrate standing for each claim he seeks to press.'"  *Neale*, 794 F.3d at 359 (quoting *DaimlerChrysler*, 547 U.S. at 352).  The Second Circuit, for example, relied on the assertion that "class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members."  *Langan v. Johnson & Johnson*

*Consumer Cos.*, 897 F.3d 88, 95 (2d Cir. 2018).  But this expressly conflicts with *Neale*.  The First

Circuit has made a similarly erroneous conclusion in reliance on its decision to "train[] our Article

III focus in class actions on the incentives of the named plaintiffs to adequately litigate issues of

importance to them," rather than on whether those named plaintiffs have standing for each claim

they seek to press.  *In re Asacol Antitrust Litig.*, 907 F.3d 42, 48–49 (1st Cir. 2018) (citation

omitted).  The Third Circuit, in contrast, has faithfully followed *DaimlerChrysler* and required

standing for *each* claim.[2]

### B.     The Standing Issue Here Cannot Be Deferred to the Class Certification Decision

EPPs may ask this Court to defer its decision on standing to class certification, as some

non-binding court decisions have mistakenly done.  *See* D.I. 76 at 1 (EPPs quoting the statement

in *In re Liquid Aluminum Sulfate Antitrust Litig.* that the standing decision should be deferred,

2017 WL 3131977, at *19 (D.N.J. July 20, 2017)).  But that would improperly contravene binding

precedent.

"Standing is a 'threshold question in every federal case.'"  *Wheeler v. Travelers Ins. Co.*,

22 F.3d 534, 537 (3d Cir. 1994) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  In class

actions as well, "class representatives must meet Article III standing requirements *the moment a

complaint is filed*."  *Neale*, 794 F.3d at 367 (emphasis added).  "The threshold standing

---

[2]  EPPs have also relied on a Seventh Circuit decision to argue that "whether or not there was
conduct arising out of the laws of other states . . . is really a choice of law analysis" rather than
a standing analysis.  Mots. to Dismiss Hr'g Tr. 108:1–9 (Apr. 28, 2020) (referencing *Morrison
v. YTB Int'l, Inc.*, 649 F.3d 533 (7th Cir. 2011)).  That decision is inapposite because the court
merely held that it is not a standing issue to determine whether plaintiffs who are already part
of a lawsuit and have standing outside Illinois have the ability to assert a claim under Illinois
law where other plaintiffs suffered injury.  *Id.* at 535–36.  The Seventh Circuit has not
addressed what named plaintiffs attempt here:  to assert claims, for which they themselves lack
standing, on behalf of *absent* class members.

determination may not be postponed to class certification[.]"  *Insulin*, 2019 WL 643709, at *16.

There is no applicable exception to the general rule, although some courts have mistakenly applied one based on a misinterpretation of *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).  *Amchem* allowed consideration of certification of a settlement class before considering the standing of *absent* class members because class certification was "logically antecedent" to the standing issue.  521 U.S. 591, 612 (1997).  Some courts have misinterpreted "logically antecedent" to allow deferring a standing determination until the class certification decision whenever that would be "efficient" or "makes logical sense."  *See Generic Pharm. Pricing*, 368 F. Supp. 3d at 827–31; *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 1397228, at *22–23 (E.D. Va. Feb. 6, 2019), *rec. adopted in relevant part*, 400 F. Supp. 3d 418, 433 (E.D. Va. 2019).  *Amchem* does not support such a theory because, in that case, class certification was "logically antecedent" to standing only as to the absent class members and only because they would not be part of the case if certification were denied.  521 U.S. at 612–13.  *Amchem* was not addressing the standing of the named plaintiffs who were already part of the case.  *See In re Suboxone Antitrust Litig.*, 64 F. Supp. 3d 665, 693 n.16 (E.D. Pa. 2014) (recognizing *Amchem*'s narrow applicability to the standing of *absent* class members); *see also Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) (same, and emphasizing that "if it is the *class representative* who presents a standing problem, then *that* standing issue must be addressed first, prior to deciding class certification").  The *Amchem* Court simply gave no indication that its decision was changing the general rule that standing is a "threshold question" in every federal case.  *E.g.*, *Warth*, 422 U.S. at 498.

Applying the *Amchem* exception to *named plaintiff* standing, as EPPs attempt to do here, would turn standing law on its head and cause a host of problems.  It would "drag[] defendants into expensive nationwide class discovery," *In re Magnesium Oxide Antitrust Litig.*, 2011 WL

5008090, at *10 (D.N.J. Oct. 20, 2011), and this Court would be deciding a motion to dismiss claims to which no party in the case has standing, which would be an illegitimate advisory opinion. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." (citation omitted)).  The better, and legally justified, route is to dismiss all of the claims under the law of states in which named plaintiffs did not pay for the products at issue.

## II.   Many of the Claims Named Plaintiffs Have Standing to Bring Have Fatal Flaws

Named plaintiffs allege Article III standing for claims they bring under the laws of states in which they made payments, but state-specific reasons require dismissal of many of those claims.

### A.   Antitrust Statutes That Do Not Apply to Unilateral Conduct

EPPs' Sixth Claim for Relief, against Amgen alone, alleges Amgen committed illegal monopolization under Cal. Bus. & Prof. Code §§ 16700, *et seq.*, N.Y. Gen. Bus. L. §§ 340, *et seq.*, and Tenn. Code Ann. §§ 47-25-101, *et seq.*  EPP Compl. ¶ 331.  These claims fail as a matter of law because those statutes prohibit only concerted conduct, not unilateral conduct.  *See, e.g.*, *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1313–14 (D. Kan. 2018) (dismissing, on that basis, monopolization claims under California, New York, and Tennessee law).[3]

### B.   Statutes That Prohibit the Claims Brought By Named Plaintiffs Here

The states of Hawaii and Utah define the right to sue under their antitrust statutes in a way that named plaintiffs here cannot satisfy.  These limitations, described below, apply to claims

---

[3] *See also Commonw. Elec. Inspection Servs. v. Town of Clarence*, 776 N.Y.S.2d 687, 688–89 (N.Y. App. Div. 2004) (holding N.Y. Gen. Bus. L. § 340 does not apply to unilateral actions); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1109 (N.D. Cal. 2007) (same as to Tennessee law); *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986) (same as to California's Cartwright Act (§§ 16700, *et seq.*)).

brought in federal court because each limitation "'actually is part of a State's framework of substantive rights or remedies,'" meaning it is "'so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy.'" *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 415–16 (D.N.J. 2018) (citing *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 421–24 (2010) (Stevens, J. concurring)).

      *Hawaii.*  EPPs' allege violations of Chapter 480 of Hawaii's statutory code.  That chapter authorizes antitrust actions and authorizes indirect purchasers to bring antitrust actions, but in the same chapter prohibits indirect purchasers from pursuing a class action unless the Hawaii attorney general's office receives notice and a chance to pursue the case *before* the defendant is served with the complaint.  Haw. Rev. Stat. §§ 480-2, -4, -9, -13, -13.3(a) (2017).  If the attorney general decides to pursue the case, its office takes over the case and the indirect purchaser's complaint "shall be dismissed."  *Id.* § 13.3(a)(5).  Since this procedure defines the right to bring an indirect purchaser antitrust claim, it applies in federal court.[4]  And EPPs admit they did not comply:  They allege sending a letter on April 30, 2019 "informing" Hawaii's attorney general of the complaint *already filed* on February 21, 2019.  EPP Compl. ¶ 274.  Because the attorney general never had a chance to consider taking over the case before defendants were served, EPPs' right to sue never vested.  This is grounds for dismissal, as other courts have done when indirect purchasers did not comply with Hawaii's definition of their right to sue.  *See, e.g.*, *Lipitor*, 336 F. Supp. 3d at 415–16; *In re Asacol Antitrust Litig.*, 2016 WL 4083333, at *14–15 (D. Mass. July 20, 2016).

---

[4] Hawaii's restriction is distinguishable from the broadly applicable limitation at issue in *Shady Grove*—no class actions for any statutory penalty under New York law.  Hawaii's restriction applies only to private indirect purchaser antitrust claims, not to any other claim under any other law.  The Hawaii statute also specifies that it "limits the rights" of indirect purchasers by clarifying that the restriction "*shall not limit the rights* of consumers to bring class actions against any person based on unfair or deceptive acts or practices[.]"  Haw. Rev. Stat. § 480-13.3(b) (emphasis added).

The courts that have declined to apply Hawaii law in federal court misunderstood that law. Some courts believed that the statute did not "create a substantive right to recovery that only 'vests' after some action or inaction of the state attorney general." *Aggrenox*, 94 F. Supp. 3d at 254. But that is exactly what the statute does by forbidding plaintiffs from serving the complaint on the defendant, and thus starting the lawsuit, unless the attorney general declines to pursue the case. *See* Haw. Rev. Stat. § 480-13.3(a). Other courts believed Hawaii's restriction was akin to the mere notice requirements under Arizona and Nevada law. *See, e.g.*, *Generic Pharm. Pricing*, 368 F. Supp. 3d at 834–35. Arizona and Nevada's statutes are distinguishable because they specify no effect of failing to provide notice. *See* Ariz. Rev. Stat. § 44-1415(A); Nev. Rev. Stat. § 598A.210(3). Compliance with Hawaii's statute, on the other hand, creates the right to pursue the suit. *See* Haw. Rev. Stat. § 480-13.3(a). EPPs' noncompliance means they have no such right.

**Missouri**. The Missouri statute under which EPPs bring a claim authorizes claims only by consumers who pay for a product for their own use, as opposed to benefit plans that pay for products that their plan participants use. *See* Mo. Rev. Stat. § 407.025(1) (allowing claims for purchases "primarily for personal, family or household purposes"). Because named plaintiffs are health care payors, not consumers, their Missouri statutory claim should be dismissed, as multiple courts have done. *See, e.g.*, *In re Express Scripts, Inc., Pharm. Benefits Mgmt. Litig.*, 2006 WL 2632328, at *10 (E.D. Mo. Sept. 13, 2006); *Asacol*, 2016 WL 4083333, at *12.

**Utah**. The Utah statute under which EPPs bring claims provides that "[a] person who is a citizen of this state or a resident of this state . . . may bring an action[.]" Utah Code § 76-10-3109(1)(a). None of the named plaintiffs allege they are citizens or residents of Utah. EPP Compl. ¶¶ 19–21 (alleging only New York and Arizona). Thus, their claims under Utah statute should be dismissed, as multiple courts have done. *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 759–

60 (E.D. Pa. 2014); *Aggrenox*, 94 F. Supp. 3d at 251.

## C. Unjust Enrichment Claims Seeking To Circumvent Statutory Prohibitions

EPPs' unjust enrichment claims rest entirely on the same alleged anticompetitive conduct underlying EPPs' statutory claims. In such circumstances, "the vast majority of courts have held that indirect purchasers may not bring state claims for unjust enrichment if they otherwise would be barred from bringing a claim under that state's antitrust and consumer-protection statutes[.]" *Niaspan*, 42 F. Supp. 3d at 763 (collecting cases).[5] It "amounts to an attempt to circumvent *Illinois Brick*." *In re Novartis & Par Antitrust Litig.*, 2019 WL 3841711, at *6 (S.D.N.Y. Aug. 15, 2019). "[A]llowing such restitution would undermine state legislative policies and an entire body of substantive law." *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 542 n.13 (E.D. Pa. 2010).

Thus, the Court should dismiss EPPs' unjust enrichment claims in the following states that follow *Illinois Brick* and prohibit indirect purchasers from seeking antitrust damages: Alaska, Florida, New Jersey, Pennsylvania, and South Carolina. *See Novartis*, 2019 WL 3841711, at *6 (dismissing Alaska, New Jersey, Pennsylvania, and South Carolina claims); *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1175 (N.D. Cal. 2015) (addressing similar claims including Florida).

For states that allow indirect purchaser antitrust suits, but define the right in a certain way, the same rationale applies to justify preventing indirect purchasers from asserting as unjust enrichment what they cannot assert under expressly written state law. On this basis the Court should dismiss the unjust enrichment claims brought under Hawaii, Missouri, and Utah law.

---

[5] *See also Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999) (affirming dismissal of unjust enrichment claims where dismissal of antitrust, RICO, and traditional tort claims also were affirmed on appeal).

13

### D.     Unjust Enrichment Claims in States Requiring a Direct Benefit

The common law of the following statutes prevents plaintiffs from recovering for unjust enrichment unless they provide a direct benefit to the defendant, which EPPs do not allege here. See EPP Compl. ¶ 265(c) (*excludes* from the class those "who purchased Sensipar . . . directly from Defendants or their affiliates")

- <u>Florida</u>:  *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1090 (S.D. Cal. 2017) (holding that Florida Supreme Court "explicitly acknowledged 'that to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant'" (quoting *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)))

- <u>New Jersey</u>:  *Block v. Jaguar Land Rover N. Am., LLC*, 2016 WL 3032682, at *4 (D.N.J. May 26, 2016) (surveying state law and holding that "New Jersey law requires a claim for unjust enrichment to allege a direct relationship between the conferrer of a benefit and the recipient")

- <u>New York</u>:  *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1088–89 (N.D. Cal. 2014) (concluding that, although New York law does not require privity, relationships between indirect purchasers of products and defendants who allegedly fixed prices "was too attenuated for an unjust enrichment claim" (citing *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215 (N.Y. 2007), and *New York ex rel. Spitzer v. Daicel Chem Indus., Ltd.*, 42 A.D.3d 301, 304 (N.Y. App. Div. 2007)).

- <u>Pennsylvania</u>: *Novartis*, 2019 WL 3841711, at *6 (surveying Pennsylvania precedent and holding that there is a "direct benefit requirement" (citing *Stutzle v. Rhone-Poulenc S.A.*, 2003 WL 22250424, at *1–2 (Pa. Ct. Com. Pl. Sept. 26, 2003))).

### E.     Unjust Enrichment as a Standalone Claim Under California Law

Unjust enrichment is only a theory of recovery under California law, not a standalone claim, and thus courts consistently dismiss California unjust enrichment claims.  *See, e.g.*, *Lidoderm*, 103 F. Supp. 3d at  1176; *Niaspan*, 42 F. Supp. 3d at 766–67.

## III.   There Are Many Additional Flaws in Claims for Which EPPs Lack Standing

Although the Court lacks subject matter jurisdiction to address the merits of claims alleged under the laws of states in which the named plaintiffs lack standing, many of those claims also have fatal flaws on the merits.

### A.      Statutes That Prohibit the Claims Brought By Named Plaintiffs Here

*Illinois*.  Illinois forbids any private indirect purchaser antitrust class actions.  The Illinois Antitrust Act provides that "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General."   740 Ill. Comp. Stat. 10/7(2).   Illinois's prohibition on indirect purchaser antitrust class actions applies in federal court despite *Shady Grove* for reasons similar to Hawaii's restriction on class actions.  As one Third Circuit district court explained, "(1) the restrictions apply only to the IAA, (2) they are incorporated in the same statutory provision as the underlying right, not a separate procedural rule, and (3) the restrictions appear to reflect a policy judgment about managing the danger of duplicative recoveries."   *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 677 (E.D. Pa. 2010).   Numerous courts have agreed and dismissed indirect purchasers' class action claims.  *See, e.g.*, *Generic Pharm. Pricing*, 368 F. Supp. 3d at 833–34; *Flonase*, 692 F. Supp. 2d at 539; *Lipitor*, 336 F. Supp. 3d at 417–18.

*Massachusetts*.  EPPs allege a claim under Massachusetts General Laws Chapter 93A § 9, *see* EPP Compl. ¶ 354, but § 9 does not apply here.  Plaintiffs that purchased products "in the conduct of any trade or commerce" can only bring a claim under § 11, which is fatal to the alleged claim because § 11 follows federal law's *Illinois Brick* ruling and thus prohibits suits by indirect purchasers.  *See Winters v. Ocean Spray Cranberries, Inc.*, 296 F. Supp. 3d 311, 324–25 (D. Mass. 2017); *Asacol*, 2016 WL 4083333, at *13.

*Vermont*.  EPPs assert a claim under a Vermont statute that does not allow claims by health care payors like the named plaintiffs, but rather only for claims for purchases "for his or her use or benefit or the use or benefit of a member of his or her household."  Vt. St. Ann. tit. 9 § 2451a(a); EPP Compl. ¶¶ 309(z), 321(z), 331(z).  *See also In re Aggrenox Antitrust Litig.*, 2016 WL 4204478, at *9 (D. Conn. Aug. 9, 2016) (dismissing claim on this basis).

### B.      Antitrust Statutes That Do Not Apply to Unilateral Conduct

EPPs' Sixth Claim for Relief against Amgen alone does not state a claim under Kansas or Mississippi statute because those statutes apply only to concerted conduct. The Kansas Monopolies and Unfair Trade Act "by its terms prohibits combinations and conspiracies only." *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 283 (D. Mass. 2004).   And the Mississippi statute provides a private cause of action only for "person[s], natural or artificial, injured or damaged by a trust and combine," and defines "trust or combine" as "a combination, contract, understanding or agreement, expressed or implied, between two or more persons, corporations or firms or association of persons or between any one or more of either with one or more of the others." Miss. Code Ann. §§ 75-21-1, 9, -11.

### C.      Antitrust Statutes That Apply Only to Conduct That Occurred in the State

Certain states' antitrust statutes apply only to conduct that occurs in that state.

- Mississippi (Miss. Code Ann. §§ 75-21-1, *et seq.*):  *Standard Oil Co. of Ky. v. State*, 65 So. 468, 471 (Miss. 1914) (defining the state's antitrust statute to apply only if the antitrust conspiracy was "accomplished in part at least by transactions which are also wholly intrastate"); *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1158–59 (N.D. Cal. 2007) (dismissing claim on this basis).

- Nevada (Nev. Rev. Stat. Ann. §§ 598A, *et seq.*):  Nev. Rev. Stat. § 598A.060(1) ("Every activity enumerated in this subsection constitutes a contract, combination or conspiracy in restraint of trade, and *it is unlawful to conduct any part of any such activity in this state*[.]" (emphasis added)).

- South Dakota (S.D. Codified Laws §§ 37-1, *et seq.*):  S.D.C.L. § 37-1-3.1 ("*A contract, combination, or conspiracy between two or more persons* in restraint of trade or commerce *any part of which is within this state is unlawful*." (emphases added)).

- West Virginia (W. Va. Code §§ 47-18-3, *et seq.*):  W. Va. Code § 47-18-3(a) (prohibiting "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce *in this State*." (emphasis added)); *Kessel v. Monongalia Cnty. Gen. Hosp. Co.*, 648 S.E.2d 366, 375 (W. Va. 2007) ("The primary distinction between W. Va. Code § 47–18–3(a) and Section 1 of the Sherman Act is that the West Virginia statute applies to contracts and conspiracies in restraint of trade 'in this State[.]'").

16

EPPs have not alleged that any alleged misconduct occurred in these states, which requires dismissal. *See In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014, at *24–26 (E.D. Tenn. June 24, 2015) (dismissing, on this basis claims under Mississippi, Nevada, South Dakota, and West Virginia law). The courts that decline to dismiss claims on this basis improperly broaden the scope of the state law without license by the text of the statute or the state appellate courts. *See, e.g., In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 586–87 (E.D. Pa. 2018).

### D.      Unjust Enrichment Claims Seeking To Circumvent Statutory Prohibitions

As explained above, *supra* § II.C, unjust enrichment claims should be dismissed when brought under the laws of states with statutes that address anticompetitive conduct but prohibit certain types of indirect purchasers from recovering damages or filing class actions. This applies to the unjust enrichment claims in seventeen of the states and territories in which named plaintiffs lack standing yet.[6]  The same rationale also counsels in favor of dismissing the unjust enrichment claims in Massachusetts and Vermont because those state legislatures crafted their statutes in such a way that excludes named plaintiffs' claims. This Court should not assume, without controlling precedent from a particular state, that a state's common law claim of unjust enrichment allows the very claim that its state legislature prohibited.

### E.      Unjust Enrichment Claims in States Requiring a Direct Benefit

In addition to the states identified *supra* § II.D, the following states' laws preclude indirect purchasers from stating claims for unjust enrichment because they require a plaintiff to have provided a direct benefit to the defendant.

- ▪ <u>Alabama</u>:  *Opelika Prod. Credit Ass'n, Inc., v. Lamb*, 361 So.2d 95, 99 (Ala. 1978)

---

[6] The states prohibiting indirect purchaser antitrust claims for damages are at least the following seventeen: Arkansas, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Kentucky, Louisiana, Massachusetts, Montana, Oklahoma, Puerto Rico, Texas, Virginia, Washington, and Wyoming. *Novartis*, 2019 WL 3841711, at *6; *Lidoderm*, 103 F. Supp. 3d at 1175.

(holding that the benefit must be "realized as a direct result of the transaction"); *Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc.*, 2011 WL 2893629, at *6 (M.D. Ala. July 19, 2011) ("[P]laintiffs did not confer a direct benefit . . . . [T]here was no money paid *by* the plaintiffs *to* the named individuals.").

- Georgia:  *Archer v. Holmes*, 2018 WL 534475, at *5 & n.36 (N.D. Ga. Jan. 23, 2018) ("[I]n Georgia, unjust enrichment claims lie only in those situations where a defendant has received a direct benefit from a plaintiff."); *see also Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1334 (N.D. Ga. 2017) (collecting cases holding similarly).

- Idaho:  *Zetia*, 2019 WL 1397228, at *36 ("Because the EPPs as a class did not deal directly with any Defendant, they may not advance an 'indirect' unjust enrichment theory." (citing *Lincoln Land Co. v. LP Broadband, Inc.*, 408 P.3d 465 (Idaho 2017))), *rec. adopted*, 400 F. Supp. 3d at 443–44 (EPPs did not object to magistrate's decision).

- Kansas:  *In re Aftermarket Filters Antitrust Litig.*, 2010 WL 1416259, at *2–3 (N.D. Ill. Apr. 1, 2010) (Kansas law has a direct benefit requirement, and dismissing indirect purchasers' claim because any benefit provided "would be on others in the chain of distribution from whom they purchased, not on defendants").

- Kentucky: *Pixler v. Huff*, 2011 WL 5597327, at *11 (W.D. Ky. Nov. 17, 2011) (collecting cases holding that courts applying Kentucky law have "consistently . . . not only require[d] a benefit be conferred upon the defendant, but also that the plaintiff be the party conferring that benefit").

- Maine:  *Novartis*, 2019 WL 3841711, at *6–7 (Maine law has a direct benefit requirement (citing *Rivers v. Amato*, 2001 WL 1736498, at *4 (Me. Super. Ct. June 22, 2001))).

- Michigan:  *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 427 (S.D.N.Y. 2017) ("Michigan courts only employ the doctrine of unjust enrichment in cases where the defendant directly receive[d] a benefit from the plaintiff." (internal quotations and citations omitted)); *A & M Supply Co. v. Microsoft Corp.*, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) (unjust enrichment claim "not viable" where plaintiffs cannot show that "[defendant] received any direct payment or other benefit from [indirect] purchasers").

- North Carolina:  *Flonase*, 692 F. Supp. 2d at 545 & n.15 (dismissing indirect purchaser unjust enrichment claim because North Carolina law requires "a plaintiff to establish that it directly conferred a benefit on the defendant" (citing *Effler v. Pyles*, 380 S.E.2d 149, 152 (N.C. Ct. App. 1989))).[7]

- North Dakota:  *Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891, 895 (N.D.

---

[7] Although some North Carolina courts have allowed an indirect benefit, those courts recognize that "'conferr[ing] some benefit on the defendant'" is still required, which EPPs do not plead here. *Bandy v. Gibson*, 2017 WL 3207068, at *5 (N.C. Super. Ct. July 26, 2017).

1999) (North Dakota law requires that the defendant "obtained a benefit at the direct expense of the [complainant]."); *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 235 (S.D.N.Y. 2012) (same).

- Rhode Island:  *J.P. Morgan Chase Bank, N.A. v. Leigh*, 2011 WL 4351584, at *2 (D.R.I. Aug. 23, 2011) (receiving an "indirect benefit" insufficient), *rec. adopted*, 2011 WL 4351561 (D.R.I. Sept. 15, 2011).

## IV.    Unjust Enrichment Claims That Duplicate Statutory Claims Should Be Dismissed

To the extent the Court holds that EPPs have plausibly pled any statutory claim in a particular state, the Court should dismiss the unjust enrichment claim for that state because it is duplicative.  EPPs' Complaint asks the Court to interpret the unjust enrichment claims as "pleaded in the alternative," ¶ 365, but "where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action," as here, "it is not a true alternative theory of relief but rather is duplicative of those legal causes of action."  *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013).  Here, no circumstances exist in which Amgen's conduct could be permissible according to standards of conduct set forth by state legislative bodies, but wrongful under the unjust enrichment law of those same states.  This is often the case when indirect purchasers plead state antitrust claims and unjust claims, which is why courts dismiss such duplicative unjust enrichment claims.  *See, e.g.*, *Novartis & Par Antitrust Litig.*, 2019 WL 3841711, at *7; *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011).[8]

---

[8] The grounds for dismissal on this basis are particularly strong for Hawaii and Massachusetts because those unjust enrichment claims are unavailable if there is a remedy at law covering the same theory of the claim, even if such a claim under statutory or common law lacked merit. *See, e.g.*, *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 237 (M.D. Pa. 2010) ("Under Hawaii law, '[t]he absence of an adequate remedy at law . . . is the "necessary prerequisite" to maintaining equitable claims.'" (quoting *AAA Haw., LLC v. Haw. Ins. Consultants, Ltd.*, 2008 WL 4907976, at *3 (D. Haw. Nov. 12, 2008))); *Gen. Motors*, 257 F. Supp. 3d at 419 (explaining that a claim for unjust enrichment is barred "where an adequate remedy at law exists—
*(Cont'd on next page)*

Dismissing duplicative claims "serves an important function in streamlining the litigation proceedings of a complex case." *Novartis*, 2019 WL 3841711, at *7.

## CONCLUSION

EPPs' Complaint should be dismissed in its entirety for the reasons explained in Amgen's Brief in Support of its Motion to Dismiss Direct Purchaser Plaintiffs' Consolidated Complaint.  In addition, EPPs' lack of standing and failure to state a claim requires dismissal of EPPs' claims under the laws of all states and territories except the consumer protection claim under Florida law and the antitrust conspiracy claims under New York and Tennessee law.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant Amgen, Inc.*

OF COUNSEL

Eric J. Stock
Nathan Strauss
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX  75201
(214) 571-2900

March 30, 2021

---

*regardless of the viability* of that theory or whether it sounds in contract, fraud, or tort" (emphasis added)).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 30, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 30, 2021, upon the following in the manner indicated:

| | |
|---|---|
| Robert J. Kriner, Jr., Esquire | *VIA ELECTRONIC MAIL* |
| Scott M. Tucker, Esquire | |
| Tiffany J. Cramer, Esquire | |
| CHIMICLES SCHWARTZ KRINER & | |
| DONALDSON-SMITH LLP | |
| 2711 Centerville Road, Suite 201 | |
| Wilmington, DE  19808 | |
| *Attorneys for Plaintiffs César Castillo, LLC,* | |
| *KPH Healthcare Services, Inc., a/k/a Kinney* | |
| *Drugs, Inc.* | |

| | |
|---|---|
| Stephanie E. Smith, Esquire | *VIA ELECTRONIC MAIL* |
| Debra Josephson, Esquire | |
| Michael L. Roberts, Esquire | |
| Sarah E. DeLoach, Esquire | |
| ROBERTS LAW FIRM, P.A. | |
| 20 Rahling Circle | |
| Little Rock, AR  72223 | |
| *Attorneys for Plaintiffs César Castillo, LLC,* | |
| *KPH Healthcare Services, Inc., a/k/a Kinney* | |
| *Drugs, Inc.* | |

| | |
|---|---|
| Benjamin F. Johns, Esquire | *VIA ELECTRONIC MAIL* |
| CHIMICLES SCHWARTZ KRINER & | |
| DONALDSON-SMITH LLP | |
| 361 West Lancaster Avenue | |
| Haverford, PA  19041 | |
| *Attorneys for Plaintiffs César Castillo, LLC,* | |
| *KPH Healthcare Services, Inc., a/k/a Kinney* | |
| *Drugs, Inc.* | |

Linda P. Nussbaum, Esquire                          *VIA ELECTRONIC MAIL*
Bart D. Cohen, Esquire
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY  10036
*Attorneys for Plaintiffs César Castillo, LLC,*
*KPH Healthcare Services, Inc., a/k/a Kinney*
*Drugs, Inc.*

Thomas M. Sobol, Esquire                            *VIA ELECTRONIC MAIL*
Bradley J. Vettraino, Esquire
Jessica R. MacAuley, Esquire
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
*Attorneys for Plaintiffs César Castillo, LLC,*
*KPH Healthcare Services, Inc., a/k/a Kinney*
*Drugs, Inc.*

Sharon K. Robertson, Esquire                        *VIA ELECTRONIC MAIL*
Donna M. Evans, Esquire
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY  10005
*Attorneys for Plaintiffs César Castillo, LLC,*
*KPH Healthcare Services, Inc., a/k/a Kinney*
*Drugs, Inc.*

John Radice, Esquire                                *VIA ELECTRONIC MAIL*
Daniel Rubenstein, Esquire
Kenneth Pickle, Esquire
RADICE LAW FIRM, P.C.
475 Wall Street
Princeton, NJ  08540
*Attorneys for Plaintiffs César Castillo, LLC,*
*KPH Healthcare Services, Inc., a/k/a Kinney*
*Drugs, Inc.*

Michael M. Buchman, Esquire                          *VIA ELECTRONIC MAIL*
Michelle C. Clerkin, Esquire
MOTLEY RICE LLC
777 Third Avenue, 27th Floor
New York, NY  10017
*Attorneys for Plaintiffs César Castillo, LLC,*
*KPH Healthcare Services, Inc., a/k/a Kinney*
*Drugs, Inc.*

Jayne A. Goldstein, Esquire                          *VIA ELECTRONIC MAIL*
MILLER SHAH LLP
1625 North Commerce Parkway, Suite 320
Ft. Lauderdale, FL  33326
*Attorneys for Plaintiffs César Castillo, LLC,*
*KPH Healthcare Services, Inc., a/k/a Kinney*
*Drugs, Inc.*

Daniel N. Gallucci, Esquire                          *VIA ELECTRONIC MAIL*
Michael S. Tarringer, Esquire
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, PA  19107
*Attorneys for Plaintiffs César Castillo, LLC,*
*KPH Healthcare Services, Inc., a/k/a Kinney*
*Drugs, Inc.*

Ned Weinberger, Esquire                              *VIA ELECTRONIC MAIL*
LABATON SUCHAROW LLP
300 Delaware Avenue, Suite 1340
Wilmington, DE  19801
*Attorneys for Plaintiffs UFCW Local 1500 Welfare*
*Fund, Teamsters Local 237 Welfare Fund and*
*Teamsters Local 237 Retirees' Benefit Fund*

Ian Connor Bifferato, Esquire                        *VIA ELECTRONIC MAIL*
THE BIFFERATO FIRM, P.A.
1007 North Orange Street, 4th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs UFCW Local 1500 Welfare*
*Fund, Teamsters Local 237 Welfare Fund and*
*Teamsters Local 237 Retirees' Benefit Fund*

Gregory S. Asciolla, Esquire                        *VIA ELECTRONIC MAIL*
Jay L. Himes, Esquire
Karin E. Garvey, Esquire
Robin A. van der Meulen, Esquire
Matthew J. Perez, Esquire
Domenico Minerva, Esquire
LABATON SUCHAROW LLP
140 Broadway
New York, NY  10005
*Attorneys for Plaintiffs UFCW Local 1500 Welfare*
*Fund, Teamsters Local 237 Welfare Fund and*
*Teamsters Local 237 Retirees' Benefit Fund*

Scott A. Martin, Esquire                            *VIA ELECTRONIC MAIL*
Irving Scher, Esquire
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY  10004
*Attorneys for Plaintiffs UFCW Local 1500 Welfare*
*Fund, Teamsters Local 237 Welfare Fund and*
*Teamsters Local 237 Retirees' Benefit Fund*

Brent Landau, Esquire                              *VIA ELECTRONIC MAIL*
HAUSFELD LLP
325 Chestnut Street, Suite 900
Philadelphia, PA  19106
*Attorneys for Plaintiffs UFCW Local 1500 Welfare*
*Fund, Teamsters Local 237 Welfare Fund and*
*Teamsters Local 237 Retirees' Benefit Fund*

Melinda R. Coolidge, Esquire                     *VIA ELECTRONIC MAIL*
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC  20006
*Attorneys for Plaintiffs UFCW Local 1500 Welfare*
*Fund, Teamsters Local 237 Welfare Fund and*
*Teamsters Local 237 Retirees' Benefit Fund*

Roberta D. Liebenberg, Esquire                    *VIA ELECTRONIC MAIL*
Jeffrey S. Istvan, Esquire
Paul Costa, Esquire
Adam J. Pessin, Esquire
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
*Attorneys for Plaintiffs UFCW Local 1500 Welfare*
*Fund, Teamsters Local 237 Welfare Fund and*
*Teamsters Local 237 Retirees' Benefit Fund*

Brian P. Murray, Esquire                          *VIA ELECTRONIC MAIL*
Lee Albert, Esquire
Gregory B. Linkh, Esquire
GLANCY PRONGAY & MURRAY LLP
230 Park Avenue, Suite 530
New York, NY 10169
*Attorneys for Plaintiffs UFCW Local 1500 Welfare*
*Fund, Teamsters Local 237 Welfare Fund and*
*Teamsters Local 237 Retirees' Benefit Fund*

Joseph J. DePalma, Esquire                        *VIA ELECTRONIC MAIL*
LITE, DEPALMA, GREENBERG, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102-5003
*Attorneys for Plaintiffs Teamsters Local 237 Welfare*
*Fund and Teamsters Local 237 Retirees' Benefit*
*Fund*

Karen E. Keller, Esquire                          *VIA ELECTRONIC MAIL*
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Defendants Teva Pharmaceuticals USA,*
*Inc., Watson Laboratories, Inc., and Actavis Pharma*
*Inc.*

Henninger S. Bullock, Esquire                 *VIA ELECTRONIC MAIL*
Niketa K. Patel, Esquire
Nicolas E. Rodriguez, Esquire
Miranda R. Onnen, Esquire
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020-1001
*Attorneys for Defendants Teva Pharmaceuticals USA,*
*Inc., Watson Laboratories, Inc., and Actavis Pharma*
*Inc.*


*/s/ Brian P. Egan*

_____

Brian P. Egan (#6227)

6