## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:  SENSIPAR (CINACALCET HYDROCHLORIDE TABLETS) ANTITRUST LITIGATION | C.A. No. 19-md-02895-LPS |
| THIS DOCUMENT RELATES TO:<br><br>ALL INDIRECT PURCHASER ACTIONS | C.A. No. 19-369-LPS<br><br>C.A. No. 19-1461-LPS |

### INDIRECT PURCHASER PLAINTIFFS' OPPOSITION
### TO AMGEN INC.'S MOTION TO DISMISS

**THE BIFFERATO FIRM, P.A.**
Ian Connor Bifferato (Del. Bar. No. 3273)
1007 N. Orange Street, 4th Floor
Wilmington, DE 19801
Tel: (302) 255-7600
cbifferato@tbf.legal

*Local Counsel for the Indirect Purchaser*
*Plaintiffs and the Proposed Indirect*
*Purchaser Classes*

**Date: April 27, 2021**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 3

    I.      EPPs have Article III standing to pursue their claims and those of absent class members.    3

    II.     California, New York, Kansas, Mississippi, and Tennessee antitrust claims survive.    10

    III.    Hawaii, Illinois, Massachusetts, Missouri, Vermont, and Utah statutory claims survive.    11

    IV.    EPPs plead in-state conduct and/or effects sufficient to state claims under Mississippi, Nevada, South Dakota, and West Virginia antitrust law.    13

    V.     EPPs' unjust enrichment claims have been adequately pleaded.    14

        A.    Unjust enrichment claims may be pled in the alternative and do not impermissibly circumvent statutory prohibitions.    14

        B.    California unjust enrichment claims are viable.    16

        C.    "Direct benefit" is not required to be pled under state unjust enrichment laws. ......................................................................................... 16

CONCLUSION................................................................................................................ 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A & A Metal Bldgs. v. I-S, Inc.*,
274 N.W.2d 183 (N.D. 1978) ............................................................................ 20

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591, 612 (1997) .................................................................................... 6

*In re Aftermarket Filters Antitrust Litig.*,
2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ..................................................... 11

*In re Aftermarket Filters Antitrust Litigation*,
2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) ..................................................... 19

*In re Aggrenox Antitrust Litig.*,
2016 WL 4204478 (D. Conn. Aug. 9, 2016) ................................................... 12

*In re Aggrenox Antitrust Litig.*,
94 F. Supp. 3d 224 (D. Conn. 2015) ................................................... 11, 12, 13

*Alabama Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc.*,
2011 WL 2893629 (M.D. Ala. July 19, 2011) ................................................. 19

*Apache Corp. v. MDU Res. Grp., Inc.*,
603 N.W.2d 891 (N.D. 1999) ........................................................................... 20

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008) .............................................................................. 5

*In re Asacol Antitrust Litig.*,
2016 WL 4083333 (D. Mass. July 20, 2016) ....................................... 10, 12, 13

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018) ................................................................................. 4

*Avenarius v. Eaton Corp.*,
898 F. Supp. 2d 729 (D. Del. 2012) .................................................................... 6

*Bandy v. Gibson*,
2017 WL 3207068 (N.C. Super. July 26, 2017) ............................................... 18

*Bolinger v. First Multiple Listing Serv., Inc.*,
838 F. Supp. 2d 1340 (N.D. Ga. 2012) ............................................................. 17

*In re Broiler Chicken Antitrust Litig.*,
   290 F. Supp. 3d 772 (N.D. Ill. 2017) ........................................................... 6, 9, 12

*Callano v. Oakwood Park Homes Corp.*,
   219 A.2d 332 (N.J. Super. App. Div. 1966) ............................................................ 20

*Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*,
   295 F. Supp. 2d 430 (D. Del. 2003) ........................................................................ 15

*In re Cardizem CD Antitrust Litig.*,
   105 F. Supp. 2d 618 (E.D. Mich. 2000), *aff'd*, 332 F.3d 896 (6th Cir. 2003) ....... 15

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
   2015 WL 5166014 (E.D. Tenn. June 24, 2015) ....................................................... 14

*Chartis Ins. Co. of Can. v. Freeman*,
   2013 WL 12121864 (S.D. Ga. Mar. 18, 2013) ........................................................ 17

*In re Chocolate Confectionary Antitrust Litig.*,
   602 F. Supp. 2d 538 (M.D. Pa. 2009) ....................................................................... 7

*In re Chocolate Confectionary Antitrust Litig.*,
   749 F. Supp. 2d 224 (M.D. Pa. 2010) ................................................................ 15, 18

*Commonwealth v. TAP Pharm. Prods., Inc.*,
   885 A.2d 1127 (Pa. Commw. Ct. 2005) ................................................................... 19

*Cottrell v. Alcon Labs.*,
   874 F.3d 154 (3d Cir. 2017) ............................................................................... 3, 4, 5

*D.R. Ward Const. Co. v. Rohm & Haas Co.*,
   470 F. Supp. 2d 485 (E.D. Pa. 2006) ................................................................ 13, 15

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ............................................................................................... 3, 7

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
   903 F. Supp. 2d 198 .................................................................................................. 18

*Duquesne Light Co. v. U.S. E.P.A.*,
   166 F.3d 609 (3d Cir. 1999) ...................................................................................... 8

*Effler v. Pyles*,
   380 S.E.2d 149 (N.C. Ct. App. 1989) ...................................................................... 20

*In re EpiPen Mktg., Sales Practices & Antitrust Litig.*,
   336 F. Supp. 3d 1256 (D. Kan. 2018) ...................................................................... 10

*In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*,
　　2006 WL 2632328 (E.D. Mo. Sept. 13, 2006) ........................................ 13

*Fallick v. Nationwide Mut. Ins. Co.*,
　　162 F.3d 410 (6th Cir. 1998) ................................................ 5

*Fenerjian v. Nongshim Co.*,
　　72 F. Supp. 3d 1058 (N.D. Cal. 2014) .................................. 20

*Flecha v. Medcredit, Inc.*,
　　946 F.3d 762 (5th Cir. 2020) ................................................ 6

*In re Flonase Antitrust Litig.*,
　　692 F. Supp. 2d 524 (E.D. Pa. 2010) .................................. 20

*In re G-Fees Antitrust Litig.*,
　　584 F. Supp. 2d 26 (D.D.C. 2008) ..................................... 15

*Ga. Pac. Corp. v. Cook Timber Co.*,
　　194 So. 3d 118 (Miss. 2016) ............................................. 10

*In re Generic Pharm. Pricing Antitrust Litig.*,
　　368 F. Supp. 3d 814 (E.D. Pa. 2019) ........................... *passim*

*Georgia Archer v. Holmes*,
　　2018 WL 534475 (N.D. Ga. Jan. 23, 2018) ......................... 19

*Gonzalez v. Pepsico, Inc.*,
　　489 F. Supp. 2d 1233 (D. Kan. 2007) ................................ 17

*Gress v. Freedom Mortgage Corp.*,
　　386 F. Supp. 3d 455 (M.D. Pa. 2019) .................................. 6

*Hatchett v. Henry Schein, Inc.*,
　　2020 WL 733834 (S.D. Ill. Feb. 13, 2020) .......................... 12

*Home Ins. of Dickinson, A Div. of Warner & Co. v. Speldrich*,
　　436 N.W.2d 1 (N.D. 1989) ................................................ 19

*Idaho Lumber, Inc. v. Buck*,
　　710 P.2d 647 (Idaho Ct. App. 1985) ................................. 17

*Illinois Brick Co. v. Illinois*,
　　477 U.S. 431 U.S. 720 (1977) .................................. 2, 13, 15

*In re Insulin Pricing Litig.*,
　　2019 WL 643709 (D.N.J. Feb. 15, 2019) .............................. 8

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    496 F. Supp. 2d 404 (D. Del. 2007) ................................................................... 14

*Jewett v. Boihem*,
    23 So. 3d 658 (Ala. 2009) .................................................................................. 17

*Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch.*,
    504 N.W.2d 635 (Mich. 1993) .......................................................................... 18

*Kentucky Pixler v. Huff*,
    2011 WL 5597327 (W.D. Ky. Nov. 17, 2011) .................................................. 19

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
    2011 WL 1883815 (M.D. Pa. May 17, 2011) ......................................... 1, 9, 10

*Kopel v. Kopel*,
    229 So. 3d 812 (Fla. 2017) ................................................................................ 19

*Kosta v. Del Monte Corp.*,
    2013 WL 2147413 (N.D. Cal. May 15, 2013 .................................................... 16

*Landry v. Landry*,
    697 A.2d 843 (Me. 1997) ................................................................................... 18

*Langan v. Johnson & Johnson Consumer Companies*,
    897 F.3d 88 (2d Cir. 2018) ............................................................................... 4, 9

*Lau v. Constable*,
    2017 WL 536361 (N.C. Super. Feb. 7, 2017) ................................................... 18

*Lewis v. Casey*,
    518 U.S. 343 (1996) ........................................................................................ 7, 8

*Lincoln Land Co. v. LP Broadband, Inc.*,
    408 P.3d 465 (Idaho 2017) ................................................................................ 19

*In re Lipitor Antitrust Litig.*,
    336 F. Supp. 3d 395 (D.N.J. 2018) ................................................................... 12

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
    2017 WL 3131977 (D.N.J. July 20, 2017) ............................................... 6, 8, 13

*In re Loestrin 24 FE Antitrust Litig.*,
    410 F. Supp. 3d 352 (2019) ............................................................................... 10

*Long v. Southeastern Pennsylvania Transportation Authority*,
    903 F.3d 312 (3d Cir. 2018) ............................................................................. 4, 8

*Mayor of Baltimore v. Actelion Pharmaceuticals Ltd.*,
    2021 WL 1376980 (4th Cir. Apr. 13, 2021) ......................................................... 4, 5

*Metric Constructors, Inc. v. Bank of Tokyo- Mitsubishi, Ltd.*,
    72 F. App'x 916 (4th Cir. 2003) ........................................................................ 20

*Mfrs. Hanover Tr. Co. v. Chem. Bank*,
    160 A.D.2d 113 (1st Dep't 1990) ....................................................................... 18

*Michigan A&M Supply Co. v. Microsoft Corp.*,
    2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008)................................................ 20

*Miller v. Samsung Elecs. Am., Inc.*,
    2015 WL 3965608 (D.N.J. June 29, 2015) ............................................................ 6

*Neale v. Volvo Cars of North America, LLC*,
    794 F.3d 353 (3d Cir. 2015).............................................................................. 7, 8

*In re Niaspan Antitrust Litig.*,
    2015 WL 8150588 (E.D. Pa. Dec. 8, 2015) ...................................................... 8, 13

*In re Novartis & Par Antitrust Litig.*,
    2019 WL 3841711 (S.D.N.Y. Aug. 15, 2019) ...................................................... 19

*In re Opana ER Antitrust Litig.*,
    2016 WL 4245516 (N.D. Ill. Aug. 11, 2016) ................................................. 13, 16

*Opp v. Matzke*,
    559 N.W.2d 837 (N.D. 1997) ............................................................................ 19

*In re Packaged Seafood Prods. Antitrust Litig.*,
    242 F. Supp. 3d 1033 (S.D. Cal. 2017)............................................................... 19

*Parm v. National Bank of California, N.A.*,
    242 F. Supp. 3d 1321 (N.D. Ga. 2017) ............................................................... 19

*Payton v. Cnty. of Kane*,
    308 F.3d 673 (7th Cir. 2003) .............................................................................. 6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    491 F. Supp. 2d 20 (D. Mass. 2007), *aff'd* 582 F.3d 156 (1st Cir. 2009).............................. 12

*Phillips v. Selig*,
    2001 WL 1807951 (Pa. Commw. Ct. Sept. 19, 2001) ........................................... 20

*Ponzio v. Mercedes-Benz USA, LLC*,
    447 F. Supp. 3d 194 (D.N.J. 2020) ...................................................................... 7

*Powers v. Lycoming Engines*,
    2007 WL 2702705 (E.D. Pa. Sept. 12, 2007) ........................................................ 19

*In re Processed Egg Prods. Antitrust Litig.*,
    851 F. Supp. 2d 867 (E.D. Pa. 2012) ................................................ 6, 7, 9, 16, 17

*In re Propranolol Antitrust Litig.*,
    249 F. Supp. 3d 712 (S.D.N.Y. 2017)........................................................ 11, 12, 20

*Rehabcare Grp. E., Inc. v. Trenton Convalescent Operating Co.*,
    2006 WL 2711496 (D.N.J. Sept. 20, 2006) ........................................................ 18

*In re Remicade Antitrust Litig.*,
    345 F. Supp. 3d 566 (E.D. Pa. 2018) .................................................................... 6

*Rhode Island J.P. Morgan Chase Bank, N.A. v. Leigh*,
    2011 WL 4351584 (D.R.I. Aug. 23, 2011)............................................................ 20

*Rivers v. Amato*,
    2001 WL 1736498 (Me. Super. June 22, 2001)..................................................... 20

*Romano v. Motorola, Inc.*,
    2007 WL 4199781 (S.D. Fla. Nov. 26, 2007)........................................................ 17

*Sandee's Catering v. Agri Stats, Inc.*,
    2020 WL 6273477 (N.D. Ill. Oct. 26, 2020)........................................................... 6

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*,
    *2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018)* ...................................................... 10

*Sec. Benefit Life Ins. Corp. v. Fleming Cos.*,
    908 P.2d 1315 (Kan. Ct. App. 1995) .................................................................. 17

*Seye v. Cmty. Yellow Cab*,
    2013 WL 1332430 (E.D. Ky. Feb. 25, 2013) ....................................................... 18

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
    559 U.S. 393 (2010).................................................................................. 11, 12

*Sperry v. Crompton Corp.*,
    8 N.Y.3d 204 (2007).......................................................................................... 20

*Spires v. Hosp. Corp. of Am.*,
    289 F. App'x 269 (10th Cir. 2008) .................................................................... 19

*New York ex rel. Spitzer v. Daicel Chem Indus., Ltd.*,
    42 A.D.3d 301 (1st Dep't 2007) ........................................................................ 20

*Staley v. Gilead Scis., Inc.*,
    446 F. Supp. 3d 578 (N.D. Cal. 2020) .................................................................. 13

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) ........................................................ 18

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ................................................................................................. 5, 8

*Stevenson v. Windermere Real Estate/Cap. Grp., Inc.*,
    275 P.3d 839 (Idaho 2012) .................................................................................... 20

*Stewart v. Beam Glob. Spirits & Wine, Inc.*,
    877 F. Supp. 2d 192 (D.N.J. 2012) ....................................................................... 18, 20

*Stutzle v. Rhone-Poulenc S.A.*,
    2003 WL 22250424 (Pa. Ct. Com. Pl. Sept. 26, 2003) ........................................ 21

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    64 F. Supp. 3d 665 (E.D. Pa. 2014) ...................................................................... 8, 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) ................................................................ 17

*In re Thalomid & Revlimid Antitrust Litig.*,
    2015 WL 9589217 (D.N.J. Oct. 29, 2015) ............................................................ 5

*In re Valsartan, Losartan, & Irbesartan Products Liability Litigation*,
    2021 WL 100204 (D.N.J. Jan. 12, 2021) ............................................................... 7

*Vanderford Co. v. Knudson*,
    165 P.3d 261 (Idaho 2007) .................................................................................... 18

*Walco Power Servs. v. Maplehurst Farm, Inc.*,
    1987 WL 859455 (R.I. Super. Sept. 3, 1987) ....................................................... 19

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009) ............................................................................ 8

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
    627 F.3d 85 (3d Cir. 2010) .................................................................................... 3

*Williams v. Wells Fargo Bank N.A.*,
    2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ........................................................ 17

*Winter v. Ocean Spray Cranberries, Inc.*
    296 F. Supp. 3d 311 (D. Mass. 2017) ................................................................... 13

*In re Zetia (Ezetimibe) Antitrust Litig.*,
   2019 WL 1397228 (E.D. Va. Feb. 6, 2019), *report and recommendation
   adopted as modified by*, 400 F. Supp. 3d 418 (E.D. Va. 2019) ............................ 6, 10, 14, 19

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) and (12)(b)(6) ................................................................ 1

Miss. Code Ann. § 75-21-3 ................................................................................................... 10

Rule 8 ................................................................................................................. 3, 14, 15

Rule 8(d)(2) ................................................................................................................ 14, 15

Rule 8(e)(2) ................................................................................................................ 15

Rule 23 ................................................................................................................ *passim*

## NATURE AND STAGE OF THE PROCEEDINGS

On March 5, 2021, Plaintiffs UFCW Local 1500 Welfare Fund, Teamsters Local 237 Welfare Fund, Teamsters Local 37 Retirees' Benefit Fund, and Teamsters Western Region & Local 177 Health Care Plan (together the "EPPs"), filed their Second Consolidated Class Action Complaint ("SAC"). D.I. 202.[1] Defendant Amgen Inc. moved to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(1) and (12)(b)(6), which Teva joined. D.I. 209-10, 213-14, 216. For the reasons below, the motion should be denied.

## SUMMARY OF ARGUMENT

EPPs are health benefit plans that reimburse their members' purchases of prescription drugs for personal and household use. They allege that Defendants' anticompetitive conduct, which restrained competition for branded and generic Sensipar®—causing EPPs to be overcharged millions of dollars—violated state antitrust, consumer protection, and unjust enrichment laws. SAC ¶¶ 276-427. EPPs' claims should be upheld and Defendants' motion denied for the following reasons.

*First*, Defendants incorrectly expand the Article III standing inquiry to include claims on behalf of absent class members that are not before the Court. Amgen has not challenged (1) the named EPPs' Article III standing as to their claims of the states where they had purchases and/or reimbursements and (2) the fact that the named EPPs and absent class members suffered the same injury, which arose from the same allegations of misconduct. Although the Third Circuit has not directly ruled on the issue, other courts have (including the First, Second, and Fourth Circuits) and have made clear that where the named plaintiffs have Article III standing for claims brought in their individual capacity, the Article III inquiry ends. Whether EPPs can represent the interests of

---

[1] All D.I. [___] references are to the MDL docket, No. 19-md-02895-LPS.

those absent class members is a Rule 23 issue, not one of Article III standing. Amgen's "discovery burden" and "advisory opinion" arguments are overstated and without merit.

*Second*, Amgen incorrectly contends that the monopolization claims against it fail under certain states' antitrust laws because those states do not recognize unilateral forms of monopolization. But EPPs plead more than unilateral conduct by Amgen: Amgen's reverse payment and acceleration clause conduct were all done as part of settlements *with other entities*. And the concerted action EPPs plead is actionable under all state antitrust laws. Moreover, Amgen is simply incorrect about the laws of certain states.

*Third*, Amgen similarly misunderstands the law in contending that there are statutory bars to EPPs' claims under Hawaii, Illinois, Massachusetts, Missouri, Vermont, and Utah law. As to the Hawaii and Illinois antitrust claims, Rule 23 overrides these states' purported restrictions on federal class actions. As to Massachusetts, Missouri, and Vermont claims, because EPPs are benefit funds that purchase or reimburse—and do not resell—prescription drugs for their members' personal and household use, they have standing to pursue these claims. And Utah's antitrust law does not, as Amgen contends, require the named plaintiff to be a state resident.

*Finally*, none of Amgen's hodgepodge of arguments against EPPs' unjust enrichment claims has merit. EPPs (1) are permitted to plead unjust enrichment claims in the alternative, notwithstanding the existence of a state statutory claim or the lack of an "*Illinois Brick* repealer" statute,[2] (2) have a cognizable claim for unjust enrichment under California law, and (3) are not required to plead a direct relationship between themselves and Amgen in order to state an unjust enrichment claim.

---

[2] *See Illinois Brick Co. v. Illinois*, 477 U.S. 431 U.S. 720 (1977) (holding that only direct purchasers had standing to bring damages claim under federal antitrust law).

## ARGUMENT[3]

## I.  EPPs have Article III standing to pursue their claims and those of absent class members.

Completely misconstruing Article III standing requirements, Amgen contends that outside of the 15 states where the named EPPs made purchases and reimbursements of Sensipar, EPPs lack Article III standing to pursue related claims on behalf of similarly situated class members, despite the fact that all claims arise from the same alleged misconduct. Amgen Br. 4-10.

The essence of Article III standing is whether there is a justiciable case or controversy. "The requisite elements of this 'core component derived directly from the Constitution' are familiar: 'A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (internal citations omitted). Thus, to show Article III standing, EPPs must plead "(1) . . . an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Cottrell v. Alcon Labs.*, 874 F.3d 154, 162 (3d Cir. 2017) (citation omitted). "The injury-in-fact requirement is 'very generous' to claimants, demanding only that the claimant 'allege[] some specific, 'identifiable trifle' of injury." *Id.* (citation omitted). Because "financial harm is a 'classic' and 'paradigmatic form[]'" of injury in fact, EPPs' allegations that they paid artificially inflated prices for Sensipar easily satisfy Article III. *Id.* at 163 (citation omitted). And Amgen's concession that EPPs adequately pleaded injury in fact by virtue of their Sensipar purchases in certain states should end the Article III inquiry. Amgen Br. 5.

"In the context of class actions, ***Article III standing is determined vis-à-vis the named***

---

[3] "To satisfy Rule 8, a complaint must contain factual allegations that, taken as a whole, render the plaintiff's entitlement to relief plausible." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citation omitted).

*parties*." *Cottrell*, 874 F.3d at 162, n.5. (citation omitted) (emphasis added). As the First Circuit explained:

> [T]he question of [Article III] standing is not: Are there differences between the claims of the class members and those of the class representative? Rather, the pertinent question is: Are the differences that do exist the type that leave the class representative with an insufficient personal stake in the adjudication of the class members' claims? . . . . Importantly, the claims of the named plaintiffs parallel those of the putative class members in the sense that, assuming a proper class is certified, success on the claim under one state's law will more or less dictate success under another state's law.

*In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018) (finding that the named plaintiffs, end payors for the drug Asacol, had Article III standing to assert claims held by absent class members). Here, each EPP's claims arise from the same misconduct—that is, the injuries suffered by the named EPPs and the absent class members are identical and "fairly traceable" to Amgen, regardless of the state where purchases were made. Undoubtedly, there is a justiciable case or controversy here, which is all that Article III requires. That the remedy for absent class members' injuries may arise under different states' laws is of no consequence to the Article III "case or controversy" requirement.

In *Langan v. Johnson & Johnson Consumer Companies*, 897 F.3d 88 (2d Cir. 2018), the Second Circuit reached the same conclusion:

> Since class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, it makes little sense to dismiss the state law claims of unnamed class members for want of standing when there was no requirement that the named plaintiffs have individual standing to bring those claims in the first place.

*Id.*, at 95. And just a few weeks ago, the Fourth Circuit in *Mayor of Baltimore v. Actelion Pharmaceuticals Ltd.*, 2021 WL 1376980 (4th Cir. Apr. 13, 2021), came to the same conclusion:

> [T]he claims that the plaintiffs made on behalf of class members who purchased Tracleer in States other than Maryland, California, and Florida [*i.e.*, the states where named plaintiffs purchased Tracleer] need not be stricken or disregarded.

> Since those counts of the complaint define class members' claims, they may be considered in determining whether the plaintiffs' claims raise "questions of law or fact common to the class" and whether these are "typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a), and also whether the common questions "predominate."

*Id.* at *8 (citations omitted). The Sixth and Seventh Circuits have also agreed that standing to pursue the claims of absent class members is a Rule 23 inquiry. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("Once [a plaintiff's] standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23") (internal citations and quotation marks omitted); *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) ("We . . . conclude that [the plaintiff] did have standing to pursue his lawsuit. Whether he is entitled to relief on any or all of those claims and whether he may serve as an adequate class representative for others asserting such claims are separate questions.").

Although the Third Circuit has not addressed this issue, numerous district courts in the Third Circuit (and elsewhere) have recognized that a plaintiff's ability to represent the claims held by absent class members is not "an Article III jurisdictional issue," and plaintiffs need not "allege an in-state injury" because "Article III's injury-in-fact requirement 'has nothing to do with the text of the statute relied upon.'" *In re Thalomid & Revlimid Antitrust Litig.*, 2015 WL 9589217, at *19 (D.N.J. Oct. 29, 2015) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998); *see also Cottrell*, 874 F.3d at 164 (Article III does not turn on the merits of the claim); *In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 830 n.55 (E.D. Pa. 2019) ("*Generics*") ("[P]laintiffs' standing to pursue state law claims on behalf of absent class members is not an Article III jurisdictional issue."). As another Third Circuit district court has explained: "[T]he [Supreme Court] has made it clear that District Courts should defer addressing standing questions concerning putative class members who are not named until after class certification when

certification of the class is 'logically antecedent' to the issue of standing." *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977, at *19 (D.N.J. July 20, 2017) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997)); *see also In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 585 (E.D. Pa. 2018) (holding class certification is "logically antecedent" to standing concerns); *Avenarius v. Eaton Corp.*, 898 F. Supp. 2d 729, 736 (D. Del. 2012) (same).[4]

In *Gress v. Freedom Mortgage Corp.*, 386 F. Supp. 3d 455, 462 (M.D. Pa. 2019), the court recognized "the lack of binding precedent" but nonetheless found "the case law supporting Plaintiffs' argument more persuasive." In *Gress*, as here, the "Defendant does not argue that Plaintiffs lack standing to bring their own claims"; rather, it challenged claims brought by absent class members under different state laws. *Id.* The court, however, recognized that, like here, "the claims under the laws of other states are based on Defendant's alleged general conduct that is identical to Plaintiffs' individual claims." *Id.* Accordingly, "Plaintiffs' capacity to state claims under the laws of other states on behalf of putative class members, who themselves likely would have standing to raise those claims, is a matter to be decided under the rubric of Rule 23, not constitutional standing under Article III." *Id*. Other courts agree.[5]

---

[4] Amgen's reliance on *Flecha v. Medcredit, Inc.*, 946 F.3d 762 (5th Cir. 2020), is misplaced because the court did not address the issue here: whether named plaintiffs who allege that they share injury from the same misconduct may assert related claims held by absent class members. Moreover, *Flecha* relies in part on *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2003), which acknowledged that "certification of a class changes the standing aspects of a suit."

[5] *See, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 1397228, at *22-23 (E.D. Va. Feb. 6, 2019) (examining Supreme Court precedent and finding that "class certification is 'logically antecedent' to Article III standing issues"), *report and recommendation adopted as modified by*, 400 F. Supp. 3d 418 (E.D. Va. 2019); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 809-10 (N.D. Ill. 2017) (allowing "claims under laws for states in which they do not allege any of the named plaintiffs purchased"); *Sandee's Catering v. Agri Stats, Inc.*, 2020 WL 6273477, at *4 (N.D. Ill. Oct. 26, 2020) (same, citing *Broiler Chicken*); *Miller v. Samsung Elecs. Am., Inc.*, 2015 WL 3965608, at *3 (D.N.J. June 29, 2015) ("[T]he question of whether an injured Plaintiff can bring a claim under the laws of a state in which he does not reside is not a question of Article III constitutional standing, but rather a non-jurisdictional question of statutory standing."); *In re*

Amgen nonetheless urges the Court to adopt an outlier theory of Article III standing—that named plaintiffs must share Article III standing for the exact same claims as absent class members. The most recent cases relied upon by Amgen are *In re Valsartan, Losartan, & Irbesartan Products Liability Litigation*, 2021 WL 100204 (D.N.J. Jan. 12, 2021) and *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194 (D.N.J. 2020). These cases are contrary to the weight of the authority on this issue and misconstrue *Daimler*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996), and *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353 (3d Cir. 2015), to require that the named plaintiffs have Article III standing to pursue each claim held by an absent class member. But these authorities do not require that.

*Daimler* addressed the standing of plaintiffs to "challenge state tax or spending decisions simply by virtue of their status as taxpayers." *Daimler*, 547 U.S. at 346. But taxpayer standing is unlike the economic injury EPPs allege here because, as the Supreme Court found, taxpayers generally lack standing since their injury is "not concrete and particularized" as a "taxpayer suffers [injury] in some indefinite way in common with people generally." *Id.* at 344 (citations omitted). And *Daimler* did not even address a plaintiff's standing to assert claims of absent class members injured in other states. Nor did *Neale*. In fact, *Neale* cautioned that "[r]equiring individual standing of all class members would eviscerate the representative nature of the class action" and that it was "not persuaded" that all class members must possess standing. *Id.* at 364-65, *accord Generics*, 368

---

*Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 886-87 (E.D. Pa. 2012) ("*Eggs*") ("To inject the condition that Plaintiffs must satisfy certain elements of the state antitrust claims into a constitutional standing analysis . . . result[s] in an impermissible out-of-the-box merits inquiry."); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 579-80 (M.D. Pa. 2009) (plaintiffs' capacity to represent claims of absent class members are "'logically antecedent' to the standing concerns").

F. Supp. 3d at 829.[6] Finally, *Lewis* is even further afield because the named plaintiff there suffered an injury that did not arise from the same misconduct that caused other class members' injuries. *See* 518 U.S. at 357-58 (named plaintiff lacked access to special prison services to address his illiteracy, whereas other class members suffered different deprivations). Here, by contrast, EPPs allege that they suffered injury from the *identical* alleged misconduct.

Amgen's other cases offer no better support for the minority view it presses. Plaintiffs in *Long v. Southeastern Pennsylvania Transportation Authority*, 903 F.3d 312, 325 (3d Cir. 2018), suffered only a "bare procedural violation, divorced from any concrete harm." EPPs here suffered concrete harm in the form of measurable overcharges. Likewise, neither *Steel* nor *Duquesne Light*, compel dismissal on redressability grounds: neither was a class action, and each simply held that based on the alleged misconduct, the statutes at issue could not provide *any person* (apart from the government) with the relief sought.[7] By contrast, here the absent class members would have standing to bring each of the claims asserted. Amgen's remaining citations rely on a misinterpretation of precedent or are at odds with authorities in this Circuit.[8]

---

[6] Indeed, *Neale*, **which arose from the appeal of a class certification decision**, highlights that to the extent the Article III standing of absent class members is an issue (if at all), it is properly addressed under Rule 23. *See Neale*, 794 F.3d at 359-60 (noting that the "Supreme Court has yet to comment on what Article III requires of putative, unnamed class members **during a Rule 23 motion for class certification**") (emphasis added).

[7] *Steel*, 523 U.S. at 106 (holding that none of the relief sought would remedy private plaintiff's alleged injury, which arose from defendant's failure to file timely toxic and hazardous-chemical storage and emission reports); *Duquesne Light Co. v. U.S. E.P.A.*, 166 F.3d 609, 613 (3d Cir. 1999) (holding utility's claim against EPA failed redressability requirement because EPA could not require a less stringent rule, the outcome the utility sought).

[8] For example, Amgen cites several district court cases that predate more recent cases in this circuit like *Generics* and *Liquid Aluminum* or otherwise misconstrue *Daimler* and *Neale* as requiring named plaintiffs to have standing for all claims asserted on behalf of absent class members. *See In re Niaspan Antitrust Litig.*, 2015 WL 8150588, at *3 (E.D. Pa. Dec. 8, 2015); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 692-94 (E.D. Pa. 2014); *In re Insulin Pricing Litig.*, 2019 WL 643709 (D.N.J. Feb. 15, 2019).

In contrast, cases addressing whether named plaintiffs have "Article III standing to assert claims on behalf of putative class members under the laws of states in which they either have not alleged an injury or do not reside," **have** found Article III's redressability requirement satisfied. *Generics*, 368 F. Supp. 3d at 831; *Langan*, 897 F.3d at 96 n.3 (redressability concerns "that arise when a plaintiff attempts to haul a non-injurious defendant into court are not present when a plaintiff initiates a class action under various state laws prohibiting similar conduct by the same defendant").[9]

Lacking a firm legal footing, Amgen argues that allowing EPPs to pursue claims regarding purchases in other states would expose it to burdensome "nationwide class discovery" and result in the Court providing an "illegitimate advisory opinion." Amgen Br. 9-10. Neither contention is meritorious. *First*, Amgen cannot complain that EPPs' plausible allegations of anticompetitive conduct, which this Court already upheld in part (*see* D.I. 177, at 2-3) may force it into discovery. *Second*, almost no discovery in cases like this is state specific, so EPPs will seek the same discovery regarding Amgen's conduct regardless of the number of claims asserted. *Finally*, because EPPs allege that there is injury in each state where an absent class member purchased Sensipar, an adjudication of these claims at the pleading stage is not advisory. *Cf. Langan*, 897 F.3d at 93 (upholding Article III standing while also acknowledging the need to avoid advisory opinions by having parties with a "sufficient stake in the outcome of the case").

Accordingly, EPPs have Article III standing and may assert the claims of absent class members with Sensipar purchases in other states.

---

[9] *See also Eggs*, 851 F. Supp. 2d at 887 ("This injury can be redressed, if granted, by the relief sought by named Plaintiffs, which includes, inter alia, monetary damages to compensate for their financial harm as a result of conspiracy."); *Broiler Chicken*, 290 F. Supp. 3d at 809-10 ("Here, Plaintiffs plausibly allege an injury in fact by alleging that they paid inflated prices . . . which can be redressed by a favorable judicial decision.").

## II.   California, New York, Kansas, Mississippi, and Tennessee antitrust claims survive.

Amgen's contention that EPPs' Sixth Claim for Relief must be dismissed because California, New York, Kansas, Mississippi, and Tennessee antitrust statutes only prohibit concerted conduct by two or more parties, Amgen Br. 10, 16, is wrong on the law[10] and facts.

EPPs, in fact, plead two forms of concerted conduct involving Amgen: (1) its conspiracy with Teva to restrain competition for Sensipar and (2) its settlement agreements with other generic companies—pursuant to which the generics dropped their patent challenges—that contained anticompetitive acceleration clauses. *See* SAC ¶¶ 104-112; 125-132; 179-209; 324. Because EPPs "plead some sort of concerted action in support of its non-conspiracy monopolization claims," the Court should not dismiss monopolization claims under California, Kansas, Mississippi, New York, and Tennessee antitrust laws. *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, 2018 WL 7197233, *27-29 (S.D.N.Y. Dec. 26, 2018) ("*Namenda*") (upholding New York, Tennessee, California, and Mississippi monopolization claims); *see also In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 376 (2019) (upholding Kansas, New York, and Tennessee monopolization claims alleging reverse payments); *Zetia*, 2019 WL 1397228, at *27 (upholding California, Kansas, and Mississippi monopolization claims), *report & recommendation adopted as modified*, 400 F. Supp. 3d 418.[11]

---

[10] *See, e.g.*, *Ga. Pac. Corp. v. Cook Timber Co.*, 194 So. 3d 118, 121 (Miss. 2016) (Miss. Code Ann. § 75-21-3, "prohibits unilateral action by a market participant to engage in the prohibited practices."); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2011 WL 1883815, at *2, n.1 (M.D. Pa. May 17, 2011) (upholding counterclaims arising from defendant's unilateral acts under "New York's Donnelly Act [which] is a parallel antitrust statute to the Sherman Act"); *In re Asacol Antitrust Litig.*, 2016 WL 4083333, at *15 (D. Mass. July 20, 2016) (upholding Tennessee antitrust claim for unilateral acts "because Tennessee state courts appear to treat monopolization claims as viable").

[11] *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1346 (D. Kan. 2018), which Amgen relies on, dismissed New York, Kansas, and Tennessee monopolization claims relating to *unilateral* conduct—not the sort of concerted conduct alleged here.

### III.   Hawaii, Illinois, Massachusetts, Missouri, Vermont, and Utah statutory claims survive.

*Hawaii.* Amgen argues that under Hawaiian law indirect purchasers only have the right to bring a class action after following certain procedures prescribed by the statute. Amgen Br. 11. Under Supreme Court precedent, though, Amgen is wrong. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). In *Shady Grove*, the Supreme Court held that, in diversity actions, Rule 23 preempts state laws restricting class actions: "Rule 23 unambiguously authorizes *any* plaintiff, in *any* federal civil proceeding, to maintain a class action if the Rule's prerequisites are met. We cannot contort its text, even to avert a collision with state law that might render it invalid." *Id.* at 406 (emphasis in original).

Under *Shady Grove*, Hawaii's antitrust laws cannot limit federal class action procedure, which several courts have recently recognized. *See, e.g.*, *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 728 n.24 (S.D.N.Y. 2017) (failure to comply with Hawaii pre-filing notice requirements not a basis for dismissal of complaint); *Generics*, 368 F. Supp. 3d at 834-35 (same); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 253-54 (D. Conn. 2015) (same); *Namenda*, 2018 WL 7197233 at *25-26 (same).

In any event, EPPs provided notice to the Hawaii attorney general. *See* Declaration of Matthew J. Perez, Ex. A. Contrary to Amgen's contention, the notice provision is simply intended to give the Hawaii attorney general the opportunity to intervene; when the attorney general declines to take any action—as it has done here (*id.* at Ex. B)—there is no limitation on a plaintiff's ability to sue. *See In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041, at *6 (N.D. Ill. Nov. 5, 2009) (failure to comply with notice provision may not be used by a defendant "as a shield to avoid answering for alleged anti-competitive behavior"). A different result would be "inconsistent with the remedial purposes of the statute." *Id.*

Amgen's authorities are flawed because they misinterpret *Shady Grove* by treating Justice

Stevens's concurrence as controlling.[12] But as courts have recognized, it is not. *See In re Aggrenox Antitrust Litig.*, 2016 WL 4204478 at *5 (D. Conn. Aug. 9, 2016).

   ***Illinois.*** Amgen incorrectly argues that Illinois forbids private indirect purchaser antitrust actions. Amgen Br. 15. Like the Hawaii claim, under *Shady Grove*, Illinois' antitrust law cannot limit federal class action procedure, as several courts have recognized. *See, e.g.*, *Propranolol*, 249 F. Supp. 3d at 728 (holding that Illinois's "procedural rule does not control in federal court, where Rule 23 sets the only relevant requirements to file a class action"); *Broiler Chicken*, 290 F. Supp. 3d at 817 (applying *Shady Grove* and upholding Illinois indirect purchaser antitrust class claims).[13]

   ***Massachusetts, Missouri, and Vermont***. Amgen contends that the Massachusetts, Missouri, and Vermont statutes only permit suits by consumers that pay for a product for their own use, as opposed to benefit plans like EPPs. Amgen Br. 12, 15. Amgen's argument fails for two reasons. First¸ the proposed classes include both benefit plans and consumers. Second, EPPs, as benefit plans, are not resellers or distributors. Instead, they participate in consumer transactions by paying some or all of the prices charged to individual consumers for their "personal and/or household use." SAC ¶¶ 19-21; *Generics*, 368 F. Supp. 3d at 847. Courts have held that under these circumstances, benefit plans, like named plaintiffs here, have standing to bring these claims. *See, e.g.*, *Generics*, 368 F. Supp. 3d at 847-48, n.156 (upholding third-party payor claims under Massachusetts, Missouri, and Vermont consumer protection laws); *In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 81-82 (D. Mass. 2007) (third-party payors who reimbursed prescription costs could bring claims under Section 9 of Massachusetts Consumer

---

[12] *See In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 415-16 (D.N.J. 2018); *Asacol*, 2016 WL 4083333, at *14-15.

[13] *Aggrenox*, 94 F. Supp. 3d at 253-54 (under *Shady Grove*, procedural limitations in Illinois antitrust law do not apply in federal court); *Hatchett v. Henry Schein, Inc.*, 2020 WL 733834, at *3 (S.D. Ill. Feb. 13, 2020) (same).

Protection Act because they "were not motivated by the desire to make money" in the transactions), *aff'd* 582 F.3d 156, 191 (1st Cir. 2009); *In re Opana ER Antitrust Litig.*, 2016 WL 4245516, at *2 (N.D. Ill. Aug. 11, 2016) (upholding Missouri consumer protection claim brought by third-party payors); *D.R. Ward Const. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 502 (E.D. Pa. 2006) ("There is no indication that the [Vermont consumer protection statute] w[as] enacted to provide remedies to certain types of indirect purchasers").[14]

**Utah.** Amgen mistakenly asserts that EPPs lack standing because they are not Utah citizens or residents. Amgen Br. 12. But nothing in the statute requires that the *named plaintiff* in a class action be a citizen or resident. "Allegations that members of the putative class presumably include Utah . . . citizens and residents are sufficient to overcome a motion to dismiss." *Generics*, 368 F. Supp. 3d at 838 (upholding Utah antitrust claim); *Liquid Aluminum*, 2017 WL 3131977, at *28 (same); *Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578, 629 (N.D. Cal. 2020) (same). Because EPPs here allege that the proposed classes include end-payors that made purchases of Sensipar in Utah at supracompetitive prices (SAC ¶ 264), EPPs have satisfied Utah's statutory requirements.[15]

## IV.  EPPs plead in-state conduct and/or effects sufficient to state claims under Mississippi, Nevada, South Dakota, and West Virginia antitrust law.

Amgen's contention that EPPs' Mississippi, Nevada, South Dakota, and West Virginia

---

[14] Amgen's authorities are inapposite or wrongly decided. *Winter v. Ocean Spray Cranberries, Inc.* 296 F. Supp. 3d 311, 325 (D. Mass. 2017) is a summary judgment decision that found that plaintiffs' § 11 claims were barred by *Illinois Brick*. In *Asacol*, 2016 WL 4083333 at *13, the court dismissed the § 9 claims because the third-party payor did not purchase the item for "personal use," but the statute itself does not require personal use. And both *In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*, 2006 WL 2632328, at *10 (E.D. Mo. Sept. 13, 2006) and *Asacol*, 2016 WL 408333, at *12, rely on a mistaken interpretation of "persons" under Missouri law as only including natural persons.

[15] Amgen's reliance on *Aggrenox*, 94 F. Supp. 3d at 251, misses the mark; there the Utah claims were dismissed on Article III standing grounds—which, as described above, EPPs here have satisfied—not for lack of state residency. And the only case that Amgen cites that dismissed on the basis of state residency contains virtually no analysis. *See Niaspan*, 42 F. Supp. 3d at 759-60.

antitrust claims fail to satisfy those states' statutes' intrastate conduct or effects requirements (Amgen Br. 16) misinterprets those states' laws because while "[c]ases examining the antitrust laws in these states generally agree that they require allegations of intrastate conduct or effects," they "define those terms to give the statutes broad scope." *Zetia*, 2019 WL 1397228, at *24 (upholding such claims). Allegations of "a nationwide pattern of conduct that resulted in consumers in each of the challenged jurisdictions purchasing [a drug] at elevated prices"—as here (*see, e.g.*, SAC ¶¶ 311-321(m), (o), (w), (aa))—"adequately pleads sufficient intrastate connections." *Zetia*, 400 F. Supp. 3d at 438 (internal quotations and citation omitted); *Generics*, 368 F. Supp. 3d at 837 (plaintiffs sufficiently pled state antitrust claims where they alleged a "nationwide antitrust violation that increased prices paid by the end payors in each state"); *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 413-15 (D. Del. 2007) (upholding Mississippi, Nevada, South Dakota, and West Virginia antitrust claims because defendant's conduct affected commerce in each state).[16]

## V.    EPPs' unjust enrichment claims have been adequately pleaded.

### A.    Unjust enrichment claims may be pled in the alternative and do not impermissibly circumvent statutory prohibitions.

Amgen seeks dismissal of EPPs' unjust enrichment claims, arguing that they are duplicative of statutory claims or circumvent state antitrust laws prohibiting indirect purchaser actions. Amgen Br. 13, 17, 19. However, under the "'liberal pleading standards of Rule 8 in general and [Rule 8(d)(2)],'" plaintiffs may plead unjust enrichment claims in the alternative—even where

---

[16] Amgen's arguments to the contrary are often belied by the very language of the statutes. For example, South Dakota and West Virginia's statutes only require that the conduct *restrain trade in the state*—not that the conduct *occur* in the state. *See* Amgen Br. 16 (citing S.D.C.L. § 37-1-3.1; W. Va. Code § 47-18-3(a)). *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014, at *24-26 (E.D. Tenn. June 24, 2015), which Amgen also cites, dismissed state antitrust claims because there—unlike here—plaintiffs' allegations were "conclusory" and failed to "address[] any connection between the individual state and the wrongful conduct."

they "appear to be premised on the same factual basis" as existing statutory claims. *Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*, 295 F. Supp. 2d 430, 438 (D. Del. 2003) (citations and quotations omitted).[17] *See also Generics*, 368 F. Supp. 3d at 850 (denying motion to dismiss unjust enrichment claims under the laws of 25 states because "Plaintiffs are entitled to plead causes of action in the alternative.") (quotations omitted). Even Amgen's own authorities support this. *See In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 237 (M.D. Pa. 2010) (holding that dismissal of Hawaii and Massachusetts unjust enrichment claims was "premature . . . for at this stage of the litigation, . . . plaintiffs are permitted to plead alternative theories of recovery."). This case is no different, and the Court should permit EPPs' unjust enrichment claims accordingly.

Amgen also "confuses [EPPs'] right to recover an equitable remedy under a common law claim based upon principles of unjust enrichment with its right to recover a remedy at law for an alleged violation of a state's antitrust laws." *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 669 (E.D. Mich. 2000), *aff'd*, 332 F.3d 896 (6th Cir. 2003). Because "unjust enrichment . . . claims do[] not hinge upon the success of the state statutory antitrust claims," whether a plaintiff may bring an indirect purchaser action under a state's antitrust law is immaterial. *D.R. Ward*, 470 F. Supp. 2d at 506; *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 46 (D.D.C. 2008) ("No reason or logic supports a conclusion that a state's adherence to the rule of *Illinois Brick* dispossesses a person . . . of his right to pursue a common law equitable remedy.").

Thus, courts have upheld the right of indirect purchasers to bring unjust enrichment claims under the laws of the states that follow *Illinois Brick. See, e.g.*, *Generics*, 368 F. Supp. 3d at 850 (declining to dismiss Florida unjust enrichment on *Illinois Brick* grounds) (citing *G-Fees*, 584 F.

---

[17] The original text of the *Callaway* opinion references former Rule 8(e)(2), which is now Rule 8(d)(2). The changes were solely stylistic, and the substance of the rule was unaffected. *See* Fed. R. Civ. P. 8 Advisory Committee's notes on 2007 amendment.

Supp. 2d at 46). Amgen's argument to the contrary is without merit. Amgen Br. 13, 17, n.6.[18]

Amgen further contends that some states have antitrust laws that "define the right [to sue] in a certain way" (Amgen Br. 13), but courts have permitted unjust enrichment claims under those states' laws to proceed. *See Generics*, 368 F. Supp. 3d at 850.[19] Thus, contrary to Amgen's contention, EPPs are not barred from bringing unjust enrichment claims.

### B.  California unjust enrichment claims are viable.

Amgen contends that California does not recognize a standalone claim for unjust enrichment. Amgen Br. 14. But "California courts, including the Supreme Court of California, have acknowledged that parties may pursue causes of action arising from an unjust enrichment claim under California law." *Eggs*, 851 F. Supp. 2d at 913; *Kosta v. Del Monte Corp.*, 2013 WL 2147413, at *14 (N.D. Cal. May 15, 2013) (upholding California unjust enrichment claim seeking "restitution and disgorgement of a benefit unjustly conferred on [defendant]").

### C.  "Direct benefit" is not required to be pled under state unjust enrichment laws.

Amgen asserts that certain of EPPs' unjust enrichment claims fail because EPPs did not confer a "direct benefit" on Amgen. Amgen Br. 14, 17-19. But Amgen's argument incorrectly assumes that directness requires privity between plaintiffs and defendants.

In evaluating unjust enrichment claims, "[t]he critical inquiry is whether the Defendants received a benefit at [plaintiffs'] expense." *Opana ER*, 2016 WL 4245516, at *3. The term "direct" in this context simply requires that the benefit is not "incidental." *Eggs*, 851 F. Supp. 2d at 934.[20]

---

[18] Amgen mistakenly claims that Connecticut's antitrust law does not permit indirect purchaser suits, but it does. Conn. Stat. Gen. §§ 35-35, 35-46a.

[19] There is an inherent tension in Amgen's argument: if a state's antitrust law denies EPPs relief, then EPPs have no adequate remedy at law, an element Amgen argues is required for unjust enrichment under certain state laws. *See* Amgen Br. 19 n.8. Amgen cannot have it both ways.

[20] *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1189-90 (N.D. Cal. 2009) ("Whether or not the benefit is directly conferred on the defendant is not the critical inquiry;

EPPs have alleged that, as a result of Amgen's conduct: (1) they overpaid for Sensipar, (2) Amgen benefited and was enriched from those sales, (3) the benefits "are substantial and measurable," and (4) it would be inequitable for Amgen to retain those revenues. SAC ¶¶ 367, 387, 407, 409, 414. This benefit is direct, not "incidental," and thus, if directness is required under a state's unjust enrichment law, EPPs have satisfied that. In any event, though, none of the states below demands privity with a defendant for an unjust enrichment claim:

- ***Alabama*** "'It is sufficient to show that . . . the defendant has received the benefit *indirectly*.'" *Jewett v. Boihem*, 23 So. 3d 658, 662 (Ala. 2009) (emphasis and alterations in original) (citation omitted).

- ***Florida*** Because "[i]t would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary," the benefit need not pass directly from plaintiff to defendant. *Williams v. Wells Fargo Bank N.A.*, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011) (quotation and citation omitted); *Romano v. Motorola, Inc.*, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (denying motion to dismiss because "[d]efendant erroneously equates direct contact with direct benefit.") (emphasis, internal quotes, and citations omitted).

- ***Georgia*** "[T]o maintain an action for unjust enrichment, it is not necessary that the plaintiff allege a direct payment by the plaintiff to the allegedly unjustly-enriched defendant." *Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1366 n.27 (N.D. Ga. 2012). *See also Chartis Ins. Co. of Can. v. Freeman*, 2013 WL 12121864, at *8 (S.D. Ga. Mar. 18, 2013) (rejecting direct benefit requirement).

- ***Idaho*** An unjust enrichment claim does not require pleading direct benefit. *See Vanderford Co. v. Knudson*, 165 P.3d 261, 272 (Idaho 2007) (no reference to "direct benefit" in describing unjust enrichment elements); *Idaho Lumber, Inc. v. Buck*, 710 P.2d 647, 654-56 (Idaho Ct. App. 1985) (affirming plaintiff's unjust enrichment claim against a defendant where there was no direct payment and despite the fact that the benefit resulted from the parties' transactions with an intermediary).

- ***Kansas*** No direct benefit required for Idaho unjust enrichment claims. *See Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1249 (D. Kan. 2007) ("Because a benefit may be conferred indirectly, the Court cannot conclude that plaintiffs did not confer a benefit on defendants when they purchased defendants' beverage products through local retailers."); *Sec. Benefit Life Ins. Corp. v. Fleming Cos.*, 908 P.2d 1315,1323 (Kan. Ct. App. 1995) (permitting unjust enrichment claim where benefit was conferred upon a third party); *Eggs,*

---

rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct.") (citation omitted).

851 F. Supp. 2d at 929-30 (concluding "failure to plead a 'direct benefit' cannot be appropriate grounds for dismissal" because "Kansas unjust enrichment law allows claims for the conferral of indirect benefits").

- **_Kentucky_** Claims for unjust enrichment do not require a direct benefit. *See Seye v. Cmty. Yellow Cab*, 2013 WL 1332430, at *12 (E.D. Ky. Feb. 25, 2013) ("[C]ases which hold a plaintiff need not confer the benefit *directly* upon a defendant are 'not at odds' with Kentucky's first element [of unjust enrichment].") (quoting *Dixie Fuel Co., LLC v. Straight Creek, LLC*, 2011 WL 845828, at *4 (E.D. Ky. Mar. 8, 2011)).

- **_Maine_** A direct benefit is not a required element of unjust enrichment claims. *See Landry v. Landry*, 697 A.2d 843, 845 (Me. 1997) (not listing "direct benefit" as a required element of unjust enrichment). *See also Chocolate*, 749 F. Supp. 2d at 237, 243 (upholding indirect purchaser unjust enrichment claims under Maine law).

- **_Michigan_** A plaintiff need not allege a direct benefit to the defendant. *See Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch.*, 504 N.W.2d 635, 640-41 (Mich. 1993) (unjust enrichment claim can be stated without alleging conferral of direct benefit); *Suboxone*, 64 F. Supp. 3d at 707 (declining to require direct benefit for plaintiffs' Michigan unjust enrichment claim); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 5094289, at *7 (N.D. Cal. Dec. 8, 2010) ("A claim for unjust enrichment under Michigan law does not require that the plaintiff confer a direct benefit on the defendant.").

- **_New Jersey_** Plaintiffs "need not allege that it dealt directly with [defendants] to succeed on a claim of unjust enrichment." *Rehabcare Grp. E., Inc. v. Trenton Convalescent Operating Co.*, 2006 WL 2711496, at *3 (D.N.J. Sept. 20, 2006); *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 199 (D.N.J. 2012) ("[T]he 'some direct relationship' element of an unjust enrichment claim does not standing alone preclude a consumer from ever bringing an unjust enrichment claim against a manufacturer    [and]    [t]he    Court rejects that such a bright light rule is supported by New Jersey law").

- **_New York_** "Since [unjust enrichment] is equitable in nature…[i]t does not matter whether the benefit is directly or indirectly conveyed." *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 117 (1st Dep't 1990); *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 234 (S.D.N.Y. 2012) (New York unjust enrichment claim stated where plaintiffs "conferred some benefit on [d]efendants, albeit indirectly, by purchasing DDAVP at elevated prices").

- **_North Carolina_** "[A]n indirect benefit can support an unjust enrichment claim" in North Carolina. *Lau v. Constable*, 2017 WL 536361, at *5 (N.C. Super. Feb. 7, 2017). *See also Bandy v. Gibson*, 2017 WL 3207068, at *5 (N.C. Super. July 26, 2017) (sustaining plaintiff's unjust enrichment claim where plaintiffs conferred "at least an indirect benefit, on [defendant]").

- **_North Dakota_** Direct benefit is not a necessary element of unjust enrichment claims. *See*

- 18 -

*Opp v. Matzke*, 559 N.W.2d 837, 839-40 (N.D. 1997); *Home Ins. of Dickinson, A Div. of Warner & Co. v. Speldrich*, 436 N.W.2d 1, 3 (N.D. 1989) (holding that parties can be unjustly enriched without direct involvement in a transaction).

- ___*Pennsylvania*___ "[P]laintiffs need not have purchased the product at issue directly from [defendant] to have conferred benefits on the defendant." *Powers v. Lycoming Engines*, 2007 WL 2702705, at *3 (E.D. Pa. Sept. 12, 2007) (quote omitted); *Commonwealth v. TAP Pharm. Prods., Inc.*, 885 A.2d 1127, 1137-38 (Pa. Commw. Ct. 2005) (no need to plead direct benefit from plaintiff to defendants for a Pennsylvania unjust enrichment claim).

- ___*Rhode Island*___ Courts have declined to dismiss unjust enrichment claims where defendants raised similar direct benefit arguments. *See Walco Power Servs. v. Maplehurst Farm, Inc.*, 1987 WL 859455, at *2 (R.I. Super. Sept. 3, 1987) (the focus of an unjust enrichment inquiry is whether a defendant derives "*some benefit* from the plaintiff's services.").

Amgen's authorities for each of these states are either inapposite or do not otherwise demand the type of "direct benefit" Amgen contends they do.[21]

---

[21] **Alabama** *Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc.*, 2011 WL 2893629, at *6 (M.D. Ala. July 19, 2011), dismissed plaintiff's claims because of the inability to trace their payments through an intermediary party to defendants. **Florida** *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033 (S.D. Cal. 2017), is inapposite as it was premised on a case, *Kopel v. Kopel*, 229 So. 3d 812 (Fla. 2017), involving misappropriated loan proceeds— facts completely different than those here. **Georgia** *Archer v. Holmes*, 2018 WL 534475 (N.D. Ga. Jan. 23, 2018), dismissed the Georgia unjust enrichment claim as preempted by federal copyright law andthus only reached the direct benefit ruling *in dicta*. And the court in *Parm v. National Bank of California, N.A.*, 242 F. Supp. 3d 1321, 1334-35 (N.D. Ga. 2017), dismissed unjust enrichment claims without ruling on or applying any "direct benefit" test. **Idaho** *Zetia*, 2019 WL 1397228, at *36, contains no analysis of the relevant Idaho case law, which arose from facts inapplicable to those here. *See Lincoln Land Co. v. LP Broadband, Inc.*, 408 P.3d 465, 472 (Idaho 2017) (dismissing claim because "mere[] *access* to a rooftop space" was not an actualized benefit to defendant) (emphasis in original); *Stevenson v. Windermere Real Estate/Cap. Grp., Inc.*, 275 P.3d 839, 842-44 (Idaho 2012) (dismissing claim for unjust enrichment against a third party who received no benefit from plaintiff and making no reference to a "direct benefit" as necessary to an unjust enrichment claim). **Kansas** *In re Aftermarket Filters Antitrust Litigation*, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010), ultimately relies on an unpublished Tenth Circuit case that only upheld dismissal of a Kansas unjust enrichment claim because of plaintiff's failure to "point[] to [anything] in Kansas law that supports an indirect unjust enrichment claim." *Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269, 273 (10th Cir. 2008)). Here, by contrast, EPPs have provided Kansas authority supporting their ability to bring a Kansas unjust enrichment claim. **Kentucky** *Pixler v. Huff*, 2011 WL 5597327, at *12 (W.D. Ky. Nov. 17, 2011), fails to establish a direct benefit requirement because there was no benefit conferred on defendant by the plaintiff. **Maine** *In re Novartis & Par Antitrust Litig.*, 2019 WL 3841711 (S.D.N.Y. Aug. 15, 2019), relies on a state court decision that dismissed an unjust enrichment claim because no benefit was conferred—

## CONCLUSION

For the foregoing reasons, Amgen's motion to dismiss the SAC should be denied.

---

directly or indirectly. *Rivers v. Amato*, 2001 WL 1736498, at *4 (Me. Super. June 22, 2001). **Michigan** *A&M Supply Co. v. Microsoft Corp.*, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008), is a non-binding, unpublished opinion where the appellate court affirmed the trial court's dismissal of plaintiff's case for "lack of progress." Even *In re General Motors LLC Ignition Switch Litigation*, where plaintiffs' Michigan unjust enrichment claims were dismissed, acknowledged that "in some instances" a plaintiff can state a claim for unjust enrichment when there is no conferral of a direct benefit but "some sort of direct interaction." 257 F. Supp. 3d 372, 427-28 (S.D.N.Y. 2017). Here, because "[p]rice increases can be directly traced throughout [the pharmaceutical] distribution chain," *Propranolol*, 249 F. Supp.3d at 725, EPPs' Michigan unjust enrichment claim is not too remote. **New Jersey** Amgen's authority traces its direct benefit requirement to *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 335 (N.J. Super. App. Div. 1966), where defendants were third parties who did not unjustly retain a benefit and did not engage in the allegedly illegal conduct. *Callano* has since been distinguished and cabined to its particular facts—facts which are quite different than those presented here. *See Beam Glob. Spirits & Wine*, 877 F. Supp. 2d at 200 (recognizing that *Callano's* "direct relationship" requirement test shouldbe reserved for factually similar cases). **New York** *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058 (N.D. Cal. 2014), relies on cases that confirm that there is no need for a "direct" connection—only that the connection cannot be "too attenuated." *Id.* at 1089 (citing *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 216 (2007); *New York ex rel. Spitzer v. Daicel Chem Indus., Ltd.*, 42 A.D.3d 301, 304 (1st Dep't 2007)). And *Sperry* and *Daicel* are entirely distinguishable because those cases turned on the fact that the goods giving rise to the antitrust claims were mere *ingredients* in products that end users purchased, not, as here, the products themselves. **North Carolina** *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 545 & n.15 (E.D. Pa. 2010), relies on *Effler v. Pyles*, 380 S.E.2d 149 (N.C. Ct. App. 1989), which involved unique facts surrounding a real property dispute, and "decisions subsequent to *Effler* have concluded that a claim for unjust enrichment does not require a direct benefit." *Bandy*, 2017 WL 3207068, at *5 (collecting authorities, including *Metric Constructors, Inc. v. Bank of Tokyo- Mitsubishi, Ltd.*, 72 F. App'x 916, 921 (4th Cir. 2003), which held that "[u]nder North Carolina law, it is sufficient for a plaintiff to prove that it has conferred some benefit on the defendant, without regard to the directness of the transaction."). **North Dakota** Amgen relies principally on *Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891, 895 (N.D. 1999), but ignores that *Apache* itself relies on *A & A Metal Bldgs. v. I-S, Inc.*, 274 N.W.2d 183, 189 (N.D. 1978), a case allowing unjust enrichment claims to proceed where plaintiff merely alleged that "[defendant's] enrichment was directly related to plaintiffs' impoverishment." The *Apache* plaintiff could not bring an unjust enrichment claim because, unlike here, there was no enrichment without justification. **Pennsylvania** Amgen's authority relies on *Stutzle v. Rhone-Poulenc S.A.*, 2003 WL 22250424 (Pa. Ct. Com. Pl. Sept. 26, 2003), which in turn relies on *Phillips v. Selig*, 2001 WL 1807951 (Pa. Commw. Ct. Sept. 19, 2001). But *Phillips* was not an indirect purchaser case, and the court there dismissed plaintiffs' unjust enrichment claim for failure to allege that they gave *any* benefit to defendants. *Phillips*, 2001 WL 1807951, at *8. **Rhode Island** *J.P. Morgan Chase Bank, N.A. v. Leigh*, 2011 WL 4351584, at *2 (D.R.I. Aug. 23, 2011), is inapposite because, unlike EPPs here, plaintiff there failed to allege *any benefit* conferred.

Date: April 27, 2021

Respectfully submitted,

**THE BIFFERATO FIRM, P.A.**

By: */s/ Ian Connor Bifferato*
Ian Connor Bifferato (Del. Bar. No. 3273)
1007 N. Orange Street, 4th Floor
Wilmington, DE 19801
Tel: (302) 255-7600
cbifferato@tbf.legal

**OF COUNSEL:**

Karin E. Garvey
Matthew J. Perez
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
kgarvey@labaton.com
mperez@labaton.com

*Interim Lead Counsel for the Indirect*
*Purchaser Classes*

Lee Albert
GLANCY PRONGAY & MURRAY LLP
230 Park Avenue, Suite 300
New York, NY 10169
Tel: (212) 682-5340
lalbert@glancylaw.com

Todd A. Seaver
BERMAN TABACCO
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 433-3200
tseaver@bermantabacco.com

Melinda R. Coolidge
HAUSFELD LLP
888 16th Street, N.W.
Suite 300

Washington, DC 20006
202-540-7200
mcoolidge@hausfeld.com

Adam J. Pessin
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
Tel: (215) 567-6565
apessin@finekaplan.com

*Additional Counsel for the Indirect Purchaser Plaintiffs*